### STAHN v. CATAWBA MILLS.

1. ANSWER—DEMURRER—AMENDMENT OF PLEADINGS ON MOTION.—Where a defendant both answers and demurs. he may, upon notice, be required to elect upon which he will go to trial, and the other be stricken out.

2. CORPORATION—STOCKHOLDER—PLEADINGS—FRAUD.—In an action by a stockholder for redress against the corporation, an application for redress within the corporation and refusal need not be alleged, if it be shown that the directors or managing board are themselves the wrong-doers in some alleged breach of trust or fraudulent misappropriation of the corporate property, and have control of a majority of the stock, so as to control corporate action.

3. IBID.—IBID.—FRAUD—REMEDIES.—The directors are personally liable to a corporation or a stockholder for losses arising from their fraud, breach of trust or gross negligence, and any person or corporation participating therein and corruptly receiving corporate property, is likewise liable.

4. PLEADINGS — COMPLAINT — CAUSE OF ACTION — CORPORATION — STOCKHOLDER.—The complaint here states but one cause of action,

based on the right of a stockholder to fidelity and ordinary care on the part of directors in the management of corporate assets.

5. JOINT DEMURRER bad as to one defendant must be dismissed as to all.

Before ALDRICH, J., Chester, July, 1897.   Affirmed.

Action by E. C. Stahn on behalf of himself and other stockholders of Catawba Mills _v._ Catawba Mills, D. A. Tompkins, R. M. Miller, jr., J. M. Smyley, Joseph Wylie, J. L. Agurs, and S. B. Lathan, directors of Catawba Mills and Chester Mills.   From judgment overruling demurrer, defendants appeal.   So much of the Circuit decree as follows may be necessary to further elucidate the questions involved:

We will now pass to the next branch of this question, admitting that a case exists against the defendants, does the complaint show that this plaintiff has the right to maintain this action?   In _Wenzel_ v. _Palmetto Brewing Co._, 48 S. C., 83, Associate Justice Jones says: "Before a stockholder can maintain a suit in these exceptional cases, he must show that he has endeavored to get redress of his grievances within the corporation, or he must show facts which would justify a court in concluding that an effort for redress within the corporation would be unavailing."   Chief Justice McIver, in _Latimer_ v. _R. R. Co._, 39 S. C., 44, says that before the stockholder "is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the Court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes.   He must make an earnest, not simulated, effort with the managing body of the corporation to induce remedial action on their part, and this must be made apparent to the Court; if time permits, or has permitted, he must show, if he fails with the directors, that he has made an earnest effort to obtain action by the stockholders as a body in the matter of which he complains; and he must show a case; if this is not done,

then it could not be done, *or it was not reasonable to require*" (italics mine). If the allegations of the complaint show, as I think they do, that the four directors, whose conduct I have discussed, and who, under sec. 1505, Rev. Stat., "form" the "board," were hostile to plaintiff as a stock holder, and were deliberately engaged in the illegal conduct alleged, then the law will not require these directors to be requested to sue themselves. I think that he has shown facts which not only justifies, but also demands, that this Court in its discretion should conclude "that an effort for redress," addressed to the directors, "would be unavailing." In *Fitzgerald* v. *Fitzgerald & Mallory Const. Co.* (Supreme Court of Nebraska), 59 North West. Rep., pp. 842–3, quoting from Cook on Stock and Stockholders and Corporation Law, the rule is thus stated: "There are occasions when the allegations that the stockholder has requested the directors to bring suit, and they have refused, may be omitted, since the request itself is not required. This occurs when the corporate management is under the control of the guilty parties. No request need then be made or alleged, since the guilty parties would not comply with the request; and even if they did, the Court would not allow them to conduct a suit against themselves." This is believed to be a correct statement of the rule. In the case of the *Excelsior Pebble Phosphate Co.* v. *Brown*, 74 Fed. Rep., 323, Judge Simonton, in rendering the opinion of the U. S. Circuit Court of Appeals, says: "The present is a suit against the corporation itself, dominated by a president and board of directors who are charged with wrecking the corporation for their own private ends. The purpose of the bill is to rescue the corporation. To assimilate that to the case provided for in Rule 94, and to require the complainants to show that they had exhausted all efforts in inducing the directors to convict themselves of fraud, is absurd. *Howe* v. *Oakland*, 104 U. S., 450; *County of Tazewell* v. *Farmers' Loan & Trust Co.*, 12 Fed., 752; *Rangle* v. *Cotton Press Co.*, 52 Fed., 615; *Heath* v. *Railway Co.*, 8 Platchf., 347; Fed. Cas., No. 6,

306. The facts stated in the bill, if true, call for prompt and energetic interference by the Court, to prevent the destruction of the corporation and the absorption of its assets by unfaithful conduct upon the part of the president and directors, and at that stage of the case these facts must have been assumed to be true." The case of *March* v. *Eastern R. R. Co.* (New Hampshire), 77 Am. Dec., 732, is full upon these points, and in a note to this case, on page 751–2, it is said: "In *Brewer* v. *Proprietors of Boston Theatre Co.*, 104 Mass., 397, to the point that a bill by the stockholders of a corporation, alleging that individual defendants own or control a majority of the stock and control the meetings of the corporation, and that a majority of the directors are knowingly and fraudulently colluding with them to continue the control of the corporation, sufficiently shows that no redress can be obtained through the corporation or the directors." See, also, *Houston Cemetery Co.* v. *Drew* (Texas), 36 S. W. Rep., 802; and *Boney* v. *Alhambra*, Fed. Rep., 810. In the case last cited, the remarks of Judge Grosscup, may, in my opinion, be applied to this case. On page 812, he says: "If a stockholder, who has been shorn of his interest by his trustees, cannot bring a suit to arrest their fraudulent doings, there is no justice in laws. If entitled to bring such suit at all, it is a substantial right which opens up to him such a forum as any other substantial right can invoke. It would be a parody upon the statutes and the rule that this substantial right must be lost, unless the victimized stockholders can, within the time left, get together the guilty parties and demand of them a suit against themselves—a suit implying their own business and moral turpitude. Such a proceeding every sensible man out of a court of justice knows would never be complied with." In the case of *Sage et al.* v. *Culver et al.* (new book), 41 N. E. Rep., 514, after discussing the question under consideration, it is said: "When a trustee, or the officer or director of a corporation, deals with himself as an individual, or in the character of a trustee, director or officer of another corporation, with re-

spect to the funds, securities or property of the corporation, the transaction is at least open to question by the corporation, or, in a proper case, by its stockholders; and the trustee is bound to explain the transaction and show that the same was fair, and that no undue advantage has been taken by him of his position for his own advantage, or the advantage of some other corporation in which he has an interest. When it can fairly be gathered from all the allegations of a complaint, that the officers and directors of a corporation have made use of relations of trust and confidence in order to secure or promote selfish interests—enough is then averred to set a court of equity in motion, and to require an answer from the defendants in regard to facts. When it appears that the trustee or officer has violated the moral obligation to refrain from placing himself in relations which ordinarily produce a conflict between self-interest and integrity, there is in equity a presumption against the transaction, which he is required to explain," and numerous authorities are cited. Without citing, I will refer to the law upon this subject. Lawson's Rights, Remedies and Practice, sec. 486, p. 810; *Ib.*, sec. 413, p. 694; Morawitz on Priv. Corp., sec. 255, p. 245; *Ib.*, sec. 529, p. 496; *Ib.*, sec. 242, p. 236, Beach on Inj., sec. 1333; Beach on Priv. Corp., sec. 255–256 (b); *Ib.*, vol. 2, sec. 886; 4 Am. & Eng. Enc. L., 280; *Wheeler* v. *Pullman Iron and Steel Co.*, 17 L. R. A., 818, and cases cited—*Deaderick* v. *Wilson*, 8 Baxt. (Tenn), 131, and *Sean* v. *Hotchkiss*, 25 Conn., 171. While I think that plaintiff has shown by the allegations of his complaint his right to maintain this action, he has gone further and shown that he has actually done all that a man could be expected to do in seeking to obtain redress within the corporation.

Plaintiff alleges and states in the twelfth paragraph of his complaint: "That by reason of the fact that the said defendant, D. A. Tompkins, and his coadjutors, inclined and committed by pecuniary interests in the said Chester Mills to a continuance of the present policy of managing

and operating the said Catawba Mills, either own or control by proxy a majority of the stock of the said Catawba Mills, this plaintiff and other stockholders similarly situated are powerless to obtain redress or the protection of their property rights within the corporation itself." This would be sufficient, but the complaint further alleges: "That the said parties interested as aforesaid in the continuance of the present management of the Catawba Mills have for some time past been engaged in a canvass of the stockholders of said corporation for the purpose of obtaining proxies of stock for the approaching annual stockholders' meeting; and that by so obtaining the proxies of a number of shareholders, unawares or ill-informed, as plaintiff believes, of the true condition of said corporation's affairs, and by the purchase in the market of a number of shares of its said depreciated stock, the said parties have secured, as plaintiff is informed and believes, a sufficient majority to control in said stockholders' meeting; and that unless this plaintiff can obtain at the hands of this honorable Court the relief hereinafter prayed for, his stock and the stock of other shareholders in the said Catawba Mills will continue to depreciate in value, to his and their irreparable damage and injury." Plaintiff, if it was necessary, could not have sought redress from the directors as a board organized as such, because no regular meetings of the board have been held, and because, though a director himself, he had no notice of the "irregular and infrequent" meetings held. Plaintiff could not *force* the board to meet, and they did not have regular meetings; therefore, he had no chance to seek redress at the hands of the board. This failure to meet was no fault of plaintiff, but it was due to the unlawful and illegal conduct of the majority of the board. This majority cannot seek cover behind their own wrong. Plaintiff could not seek redress at the "irregular and infrequent" meetings held by the board, because he had no knowledge of them. He should have had notice of an "irregular" meeting, and it was the duty of the president or secretary to have notified

the plaintiff. Irregular meetings held without notice to proper parties suggest secrecy. Could it have been the purpose of the board to prevent plaintiff making demands for the redress of his grievances? Plaintiff, as he could not meet with the board, for the reasons stated, with other stockholders, "repeatedly" urged the "officers of the Catawba Mills," by "requests, protests and demands," to arrange "to collect or secure" the indebtedness on the part of the Chester Mills; but said "officers," disregarding these "requests, protests, and demands," "are even increasing the amount of said indebtedness." Could plaintiff have obtained a hearing by the stockholders of the corporation? Was it reasonable to ask him to seek redress there? Rev. Stat., sec. 1525, provides that a meeting of the stockholders shall be held annually in the State, at such time and place, and under such notice, as the by-laws may direct, for the election of directors and for the transaction of business. *Ib.*, sec. 1527: "A failure to hold meetings or to elect directors on the day appointed by the by-laws shall not work a forfeiture of the charter of the company, but a meeting may be called by the president for that purpose, by advertising as hereinbefore required; or if he fails or refuses to call a meeting, upon a written application of stockholders owning one-fifth of the capital stock of the company, they may call the meeting by advertisement as above." This plaintiff is not complaining because of a failure to hold an annual meeting, or of a failure to elect directors; and it is not very clear, under the statute, that stockholders owning one-fifth of the capital stock could call a meeting of the stockholders for other purposes. But let us assume that one-fifth of the stockholders could call a meeting, how was plaintiff to get that number to join in such a call? The Catawba Mills had no business office in the State; its books were in North Carolina, in the private office of Tompkins and R. M. Miller, jr.; access to them was denied, and the plaintiff ignored. How did he know who were stockholders, and the amount of their holdings? Stockholders are

generally separated, and stock is constantly changing hands.
Again, a thirty days notice of such meeting must be given.
Rev. Stat., sec. 1523.    And by the time plaintiff could have
secured signatures to a call and advertised, the Catawba Mills
might have been ruined.    The assault upon it was severe
and fast.    In *Latimer* v. *R. R. Co.*, the complaint did not
state a case in equity, alleged no effort to seek redress from
either directors or stockholders, and stated no reason why
that effort was not made.    In *Wenzel* v. *Brewing Co.*, *su-
pra*, the Court, in speaking of the complaint, says: "But it
does not appear, nor is it even alleged, that the directors or
managing board participated in, or were even cognizant of,
these unlawful acts of the president."    The unlawful acts
of the president constitute the gravamen of that complaint.
In this, the acts of the board, the president included.    The
opinion in Wenzel's case concludes with these words: "So
far as appears, neither directors nor stockholders were ap-
plied to for redress, and no facts are stated from which the
Court could infer that an honest effort for redress within
the corporation would have been useless."    On page 85, the
Court says: "The allegations that Doscher and his relatives
and friends own or control a majority of the stock is very
far from saying that Doscher himself owned and controlled
it."    In the case at bar, the direct allegation is, that "D.
A. Tompkins and his coadjutors * * * either own or con-
trol by proxy a majority of the stock of the said Catawba
Mills."    "D. A. Tompkins and his coadjutors" mean some-
thing far different to "Doscher and his relatives and friends."
Coadjutor, as here used, means an aider, assistant, and abet-
tor in the illegal acts and conduct complained of.    There
is no equivocation in the allegations that Tompkins and
his coadjutors control the corporation as stockholders; be-
cause they "either own or control by proxy" a majority of
the stock.    It seems to me that the cases of Latimer and
Wenzel, in full accord with the trend of jurisprudence, both
State and Federal, sustain the views herein announced, and
support the conclusion that the demurrer should be over-

ruled. If this complaint is true, and I must assume that all of the allegations properly pleaded are true, then these defendants must answer the charges against them; if the complaint, verified, is not true, then, perhaps, the law of perjury may be invoked. As to the third ground of demurrer: "That several causes of action have been improperly united, in that plaintiff herein seeks to obtain judgment in favor of the Catawba Mills in an accounting for goods sold and delivered, and also against the officers of said Catawba Mills who should be found responsible for said debt contracted by the Chester Mills to the Catawba Mills." It is overruled. The complaint states one cause of action. It makes no difference that there are numerous defendants, or that the relief sought, to be complete, is to be adjudged against different persons. It is the cause of action, not the relief demanded, which controls. See Pom. Rem., sec. 452 *et seq.; Mack* v. *DeBardeleben Coal and Iron Co.*, 9 L. R. A., 650; *Muin* v. *Belle Isle Ice Co.*, 17 L. R. A., 412; *Wagner* v. *Sanders*, 49 S. C., 197. I have not considered separately the question of laches raised in the demurrer. No stress was laid upon it in argument. It is discussed in several of the cases cited, and I will overrule it. Wherefore, it is ordered and adjudged, that the demurrer of the defendants to the complaint herein be, and hereby is, overruled and dismissed, with leave to the defendants to serve their answer, or answers, to the complaint herein within twenty days after notice of the filing of this order.

*Messrs. Wilson & Wilson*, for appellants, cite: 39 S. C., 44; 48 S. C., 80; 2 Hare, 461; 104 U. S., 450.

*Messrs. Henry & McClure*, also for appellants, cite: *Rev. Stat. 1532 has no application:* 53 Vt., 519; 6 S. R., 88; 45 Ind., 170; 12 S. R., 837; 141 U. S., 132; 2 McC., 167; 49 S. C., 192; 48 S. C., 80; 16 N. E. R., 426; 9 L. R. A., 650.

*Messrs. Barber & Marion*, contra, cite: Code, 164; 25 Conn., 171; Rev. Stat., 1532; 48 S. C., 80; 39 S. C., 44; 104

U. S., 450; 17 L. R. A., 821; 14 Blatch., 379; 8 Id., 342; 6 Allen, 52; 59 U. S., 404; 52 Ind., 297; 57 N. H., 398; 8 Bax., 131; 74 Fed. R., 323; 41 N. E. R., 514; 77 Am. Dec., 732; 36 S. W. R., 802; 7 Minn., 252.

Nov. 9, 1898. The opinion of the Court was delivered by

MR. JUSTICE JONES. This appeal comes up from an order overruling a demurrer to the complaint with leave to answer. The complaint is by a stockholder in the Catawba Mills, a manufacturing corporation, against said corporation, its directors and others, seeking redress for alleged mismanagement and misappropriation of the corporate property. The grounds of demurrer may be stated to be substantially: (1) That the complaint does not state facts sufficient to constitute a cause of action, in that it does not appear that the Catawba Mills or its officers have been requested and have neglected or refused to institute this suit, nor does it appear that such request, if made, would have been useless. (2) That several causes of action have been improperly united, in that plaintiff seeks judgment in favor of the Catawba Mills against the Chester Mills for goods sold and delivered, and also against the officers of the Catawba Mills, who should be found responsible for said loan or credit to the defendant, Chester Mills.

At the same time, and, indeed, in the same paper containing the demurrer, defendants also answered to the merits. The Circuit Court, on motion, duly noticed, required defendants to elect whether they would stand upon the demurrer or the answer. This ruling is the basis of one of the grounds of appeal, but appellants have not argued or pressed the point, and we need only say that was not erroneous.

Does the complaint state facts sufficient to constitute a cause of action? Judge Aldrich, in his opinion overruling the demurrer, shows conclusively that it does, and we can add very little to what he has said. In the case of *Wenzel* v. *Brewing Co.*, 48 S. C., 80, which followed

*Latimer* v. *R. R. Co.*, 39 S. C., 44, this Court stated the principle which must govern this case, in this language: "The general rule undoubtedly is, that when the directors or managing board of a corporation are charged with mismanagement or misappropriation of the corporate property, the action to restrain or redress such wrong must be instituted by the corporation, since the conduct complained of is a breach of the trust relation between the directors and the corporation. But to this general rule there are well recognized exceptions, viz: when the directors or managing board do, or threaten to do, some act *ultra vires*, or some. act of fraud, oppression or illegality, injurious to the corporation, or in violation of the rights of the stockholders, to prevent injustice, a stockholder is permitted to maintain an action in his own name. This is substantially the rule declared in *Latimer* v. *R. R. Co.*, 39 S. C., 44, following and approving the principles announced in *Hawes* v. *Oakland*, 104 U. S., 450. Further, before a stockholder can maintain a suit in these exceptional cases, he must show that he has endeavored to get redress of his grievances within the corporation, or he must show facts which would justify a court in concluding that an effort for redress within the corporation would be unavailing." It is also a well established rule that an application for redress within the corporation, and refusal, need not be alleged, if it be shown that the directors or managing board are themselves the wrongdoers in some alleged breach of trust or fraudulent misappropriation of the corporate property, and have control of a majority of the stock, so as to control corporate action. In such a case it is reasonable to infer that an effort for redress within the corporation would be unavailing. *Brewer* v. *Boston Theatre*, 104 Mass., 387; *Eschweiler* v. *Stovell*, 78 Wis., 316; s. c., 23 Am. St. Rep., 411; *Miner* v. *Belle Isle Ice Co.* (Mich.), 17 L. R. A., 417, and cases cited; *Wheeler* v. *Pullman Iron and Steel Co.* (Ill.), 17 L. R. A., 821, and cases cited. The complaint alleges, substantially, that the board of directors of both the Catawba Mills and the Ches-

ter Mills consist of seven each, and that the defendants, Tompkins, Wylie, Smyly, and Miller, are directors of the Catawba Mills and Chester Mills; that Tompkins, Wylie, and Miller are respectively president, vice-president, and secretary and treasurer of both mills; and that Smyly, director of both mills, is superintendent of the Chester Mill; that neither Smyly nor Miller are *bona fide* owners and holders of stock in the said Catawba Mills, but that they hold their said stock for the use and benefit of the said Tompkins and his "dummies" on the said board of directors; that said Tompkins is in actual control of both mills, holds stock in the Chester Mills of the par value of $35,000, while his stock in the Catawba Mills is only of the par value of $2,100; that said Tompkins, Wylie, Smyly, and Miller, a majority of the directors in both mills, have, in the aggregate, larger pecuniary interests as shareholders and bondholders of the Chester Mills than of the Catawba Mills; that the Chester Mills is insolvent, or in imminent danger of insolvency, and has been so for some time past; that with full knowledge thereof, the officers of the Catawba Mills (which must mean the directors, or the president, vice-president, secretary and treasurer thereof,) have, for months past, sold, on open account and without security, to the said Chester Mills, and are continuing to furnish to said insolvent corporation, large quantities of yarns, &c.; that the said Chester Mills is now indebted to the Catawba Mills on account of products so furnished in an amount aggregating $20,000; that said officers of the Catawba Mills have made no arrangement to collect or secure said indebtedness, although repeatedly urged to do so by plaintiff and other stockholders of the Catawba Mills; that, on the contrary, they are ever increasing the amount of said indebtedness; that the Catawba Mills has no business office in this State, but conducts its business in the office of said Tompkins and Miller, in Charlotte, N. C., where all the books and financial accounts are kept; that a personal inspection of said books has heretofore been denied to other stockholders of

the Catawba Mills; that on application by letter on the part
of plaintiff to said Miller, secretary and treasurer, failed to
elicit the definite information desired, &c.; that the capital
stock of Catawba Mills is not excessive, its plant practically
new and well equipped, its indebtedness not large, and that,
if wisely, discreetly, and honestly managed in the interest
of its stockholders, it would earn a reasonable dividend
upon its stock, &c.   Then follows paragraphs 10, 11, and
12 of the complaint, which we quote in full: "10. That by
reason of the gross mismanagement on the part of the de-
fendant, the said D. A. Tompkins, president, and his coad-
jutors and dummies in control of the said Catawba Mills,
and of his and their unreasonable, unwarranted and fraudu-
lent extension of credit to the Chester Mills, in which said
corporation he and they hold much larger pecuniary inter-
ests, as aforesaid, the Catawba Mills has not only failed to
pay any dividends to its stockholders under their manage-
ment, but the stock of the said corporation has depreciated
in market value more than forty per cent., and, as the
plaintiff verily believes, will continue to depreciate as long
as the said managing officers are permitted to conduct the
business of said mills in the State of North Carolina, in an
arbitrary and secretive manner, and to operate the same in
the interest of the said insolvent Chester Mills, to the great
and irreparable damage of this plaintiff and other stock-
holders of the said Catawba Mills.   11. That no regular
monthly meetings of the board of directors of said Catawba
Mills, of which this plaintiff is a member, have been held,
as required by the by-laws of the said corporation, or, if
held, they have been had without this plaintiff's know-
ledge; that the failure to hold said directors' meetings has
been due, as plaintiff is informed and believes, to the
machinations of the said D. A. Tompkins, president, in
endeavoring to invest himself with absolute control in the
management of the said corporation; that at such irregu-
lar and infrequent intervals as the said board of directors
may have met for the transaction of business, the said D.

A. Tompkins, president, submitted inadequate and evasive reports as to the condition of said corporation, and of his administration of its said affairs; that by reason thereof the said unwarranted and fraudulent credit or loan of $20,000 to the insolvent Chester Mills, as aforesaid, was made without the knowledge or consent of this plaintiff, and, as he is informed and believes, without the knowledge or consent of other members of said board of directors, being in effect a credit sale by D. A. Tompkins, president of the Catawba Mills, to D. A. Tompkins, president of the Chester Mills. 12. That by reason of the fact that the said defendant, D. A. Tompkins, and his coadjutors, inclined and committed by pecuniary interest in the said Chester Mills to a continuance of the present policy of managing and operating the said Catawba Mills, either own or control by proxy a majority of the stock of the said Catawba Mills, this plaintiff and other stockholders similarly situated are powerless to obtain redress or the protection of their property rights within the corporation itself. That the said parties, interested as aforesaid in the continuance of the present management of the Catawba Mills, have, for some time past, been engaged in a canvass of the stockholders of said corporation, for the purpose of obtaining proxies of stock for the approaching annual stockholders' meeting; and that by so obtaining the proxies of a number of shareholders, unaware or ill-informed, as plaintiff believes, of the true condition of said corporation's affairs, and by the purchase in the market of a number of shares of its said depreciated stock, the said parties have secured, as plaintiff is informed and believes, a sufficient majority to control in said stockholders' meeting. And that unless this plaintiff can obtain at the hands of this honorable Court the relief hereinafter prayed for, his stock and the stock of other shareholders in the said Catawba Mills will continue to depreciate in value, to his and their irreparable damage and injury." We think the complaint shows facts from which the Court could reasonably infer that plaintiff could

not obtain redress within the corporation, in which case it is not necessary to allege facts showing an honest effort to procure corporate action.

As to the second ground of demurrer, we agree with the Circuit Court in overruling the same. Directors are personally liable to the corporation, or in a proper case to any stockholder, for losses arising from their fraud, breach of trust or gross negligence in the management or disposition of the corporate property, and any person or corporation participating in such fraudulent conduct, or corruptly receiving the corporate property fraudulently disposed of, is likewise liable. The complaint does not attempt to *declare* on two or more causes of action, it states but a single cause of action, based on the right of a stockholder to fidelity and ordinary care on the part of directors in the management and disposition of corporate assets, the duty of the directors in that regard, and the alleged delict or wrong, whereby, it is said, loss to the corporation or stockholder has been sustained. The demurrer in this case is joint as to all defendants. Being bad as to such defendant directors as are properly alleged to have fraudulently disposed of corporate property, or allowed it to be so disposed of by their gross negligence, it must be held bad as to all other defendants joining in the demurrer. *Lowry* y. *Jackson*, 27 S. C., 318.

The judgment of the Circuit Court is affirmed.