10204

PERUVIAN GUANO CORPORATION v. THOMPSON *ET AL.*

(99 S. E. 808.)

CORPORATIONS—LIABILITY OF OFFICERS—BREACH OF CONTRACT.—The managing officers of a corporation, who signed on its behalf a contract for the sale of plaintiff's fertilizer whereby it agreed to hold in trust and turn over to plaintiff the cash proceeds and notes received for such sales, but instead treated the proceeds as ordinary receipts of the corporation, are personally liable therefor to the plaintiff after the bankruptcy of the corporation.

Before GARY, J., Dillon, Spring term, 1918. Reversed and remanded.

Action by the Peruvian Guano Corporation against J. S. Thompson and another. Judgment for defendants, and plaintiff appeals.

· *Messrs. Willcox & Willcox* and *John P. Lynch,* for appellant. *Messrs. Willcox & Willcox,* submit: *That the respondents are individually liable to appellant:* Elliott on Private Corporations 527; 7 R. C. L., pp. 491, *et seq.; 72* S. C. 485; 230 Fed. Rep., p. 1005; 103 Md. 364; 64 Atl. 26; 8 L. R. A. (N. S.) 738; 7 Ann. Cas. 1114, notes.

*Messrs. Gibson & Muller* and *L. D. Lide,* for respondents, submit: *That the respondents are not individually liable to appellant for any loss sustained by it in its dealings with the J. S. Thompson Company, a corporation of which respondents were officers:* 230 Fed. Rep. 1005; 141 U. S. 132; 53 S. C. 553; Thompson on Corporations (2d Ed.), secs. 1219, 1295, *et seq.;* 105 S. C. 120; Bigelow on Estoppel, p. 717; 63 S. C. 188; 87 S. C. 332.

June 23, 1919.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The following · statement appears in the record:

"On the 9th day of February, 1914, the appellant, Peruvian Guano Corporation, entered into a contract with the J. S. Thompson Company, whereby the appellant agreed to sell, and the Thompson Company to buy, certain fertilizer. Under the terms and conditions of this contract, the Thompson Company was to turn over to appellants proceeds of all cash sales, and should take notes for all sales payable later than May 1, 1914, which notes should be turned over to appellant, and proceeds of all sales and all collections thereon should be held by Thompson Company in trust for appellant. The contract provided that an account of all transactions with relation to the fertilizer should be kept separate, and that all evidences of indebtedness, securities, or collections

should be held for the use and benefit of appellant, and that no notes, accounts, liens, or other evidences of indebtedness should be pledged without written consent of appellant.

"The Thompson Company failed to comply with all of these provisions, claiming a waiver thereof. The Thompson Company became insolvent, was adjudicated a bankrupt, and the appellant received but a small portion of its claim through the bankruptcy proceeding.

"J. S. and J. R. Thompson, the respondents herein, were the managing officers of the corporation, the J. S. Thompson Company. The appellant seeks here to charge them individually with the loss sustained by it, alleging that the same was due to the careless and negligent management of the corporate affairs by them as its officers, particularly with reference to the alleged violation of the contract between the appellant and the corporation."

The contract, omitting formal portions, contains the following provisions:

"Terms: For full payment, negotiable notes are to be given, dated May 1st, and maturing October 15th, November 1st and 15th, and December 1st, 1914, we to allow $2.00 on all goods sold on this contract.

"(2) That the proceeds of all sales made by the said customer for cash, are to be turned over to the Peruvian Guano Corporation, and for all sales payable later than May 1st, 1914, negotiable notes shall be taken to mature not later than November 15th, 1914. All notes so taken to be indorsed by the customer and delivered to the Peruvian Guano Corporation, as further security for the payment of the customer's indebtedness.

"(3) That the proceeds of all sales made by the said customer, and all collections made therefor, are deemed to be owned and to be held by the customer in trust for the account of the Peruvian Guano Corporation, for said fertilizer.

"(4) That until sold or settled for by the purchaser here-under, the fertilizer contracted for under this agreement, shall remain the property of the corporation and when sold all proceeds of the sales of such fertilizers including cash, notes, open accounts, liens, bills of sale, or any other evi-·dence of debt and collections therefrom, are to be kept sepa-rate and held for the use and benefit of the corporation, and subject to its order, and shall not be pledged without the written consent of the Peruvian Corporation, and the same, together with any fertilizers taken under this agreement unsold by the customer, shall be the property of the corpora-tion until the entire indebtedness of the customer arising under this agreement has been paid.

"(5) That any failure on the part of the customer to fulfill his obligations arising under this agreement shall cause the debt hereunder to become immediately due and· payable to the corporation and any report or occurrence unfavorable to his credit, shall terminate this agreement at the opinion of the corporation, and all fertilizers then shipped and unsold by the customer shall be subject to the order of the corpora-tion.

"(6) This contract shall be subject to approval at the chief office of the Peruvian Guano Corporation, and no ver-bal agreement with salesmen are binding." .

A reference was ordered by the Circuit Court, for the purpose only of taking and reporting the testimony. ·

His Honor, the Circuit Judge, found the facts as follows, and ordered that the complaint be dismissed:

"It seems to me that, if the plaintiffs have suffered injury in the manner alleged, their own negligent conduct con-tributed quite·as much and as directly to such result as did the conduct of the officers. As .stated above, plaintiffs' agent expressly waived, as far as he could, compliance with the condition which required the Thompson Company to turn over to plaintiffs notes taken from customers; plain-

tiffs were bound to know that cash sales would most likely be made in the early spring; they must have known that, if cash sales were being made, the money was not being turned over to them by the Thompson Company; if no sales were made, they took no steps to preserve their title to the property by recording what was, without recording, only a conditional sale, void as to subsequent purchasers, etc. Notwithstanding a note for about $1,000 was taken in payment of fertilizer from McEachern, and the note was not paid until December, the plaintiffs took no steps by claim and delivery proceedings or any other means to recover possession of the said notes. The plaintiffs stood by and permitted the Thompson Company to deal with the fertilizer according to methods which must have been known to the plaintiffs from early in February until October and even until December, without protest or the least effort to protect themselves. Apparently the plaintiffs were satified with the obligation of the Thompson Company without collateral security, and were indifferent as to the methods pursued in dealing with the fertilizer. Now since bankruptcy has overtaken the Thompson Company and plaintiffs' *pro rata* of the bankrupt estate proved to be small, they are very diligent in pursuing individual officers. I think there was such an acquiescence by the plaintiffs in the methods pursued by the Thompson Company in dealing with the fertilizer as will now prevent plaintiffs from proceeding against the individual officers of the corporation."

Plaintiff appealed upon the following exceptions:

(1) "His Honor erred, it is respectfully submitted, in holding that the facts disclosed by the evidence herein do not make a proper case for the application of the rules of law governing the individual liabilities of officers of a corporation for mismanagement, fraud, negligence, misfeasance or malfeasance with respect to the affairs of the corporation.

(2) "His Honor erred, it is respectfully submitted, in holding that there had been a waiver by the plaintiff of any of the provisions of the contract relied on by the plaintiff.

(3) "His Honor erred, it is respectfully submitted, in holding that the plaintiff had been guilty of such negligent conduct as amounted to an acquiescence on its part in the negligent mismanagement of the affairs of the corporation by its officers, the defendants herein."

The allegations of the complaint are sufficient to state a cause of action against the defendant. *Stahn v. Catawba Mills,* 53 S. C. 519, 31 S. E. 498; *Kickbusch v. Ruggles,* 105 S. C. 525, 90 S. E. 163; *Am. Cotton Oil Co. v. Saluda Oil Mill Co.,* 107 S. C. 422, 93 S. E. 14; *Va.-Car. Chemical Co. v. Ehrlich* (D. C.), 230 Fed. 1005.

As to the facts, this Court draws inferences from the testimony different from the findings by his Honor, the Circuit Judge. The finding by this Court is that the only waiver on the part of the plaintiff was as to the following provision in section 2 of the contract:

"That all notes so taken, to be indorsed by the customer and delivered to the Peruvian Guano Corporation as security for the payment of the customer's indebtedness."

And that the testimony sustains the allegations of the complaint as to the personal liability of the defendants.

It is the judgment of this Court that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court, for such further proceedings as may be necessary to carry into effect the conclusions herein announced.