13714

WINN v. HARBY ET AL.

(172 S. E., 135)

*Messrs. Melton & Belser and Shepard K. Nash,* for appellant,

*Messrs. R. D. Epps and R. O. Purdy,* for respondent,

November 13, 1933.

The opinion of the Court was delivered by Mr. JUSTICE BONHAM.

From the statement agreed upon for the hearing of the appeal, in this case, and the pleadings, we gather the following narrative of the origin and progress of the litigation.

D. James Winn, of Sumter, died in 1921, leaving of force his will by which he appointed the Sumter Trust Company, a banking corporation, executor of his will and trustee of his estate for the purposes therein stated. The trust company accepted the offices of executor and trustee and duly qualified. The trust company, as we shall call it, suspended business and was placed in the hands of a receiver the 17th of February, 1927. The plaintiff was appointed substitute trustee of the Winn estate and brought action against H. J. Harby, I. C. Strauss, George D. Levy, C. G. Rowland, P. M. Parrott, C. L. Stubbs, H. C. Haynsworth, Neill O'Donnell, T. H. Parker, R. O. Purdy, W. W. Sibert, G. A. Lemmon and Albert C. Phelps, who were the directors and officers of the trust company. Subsequent to the beginning of the action, G. A. Lemmon and Albert C. Phelps died, and Elizabeth W. Lemmon, as executrix of the will of G. A. Lemmon, and Albert C. Phelps, as executor of the will of A. C. Phelps, were substituted as parties defendant in the stead of the said two decedents.

The will of D. James Winn provided that, after the payment of the debts of the estate, the net income should be paid to his widow, and, under certain circumstances set out in the will, to his children, for and during the terms of their natural lives, with further provisions for the final disposition of the trust funds. The widow and children were still living when this suit was instituted.

The gravemen of the charge against defendants is that they mingled the assets of the estate with the moneys

of the trust company and used it in its banking business; that it was the duty of the defendants to safely invest and secure the moneys belonging to the estate; that authority was given to the trustee by the will to sell property for change of investment; that the defendants soon after taking charge of the estate began converting assets, then safely secured into money and to sell real estate until they had, from time to time, accumulated a sum approximating $20,000.00 in cash; that they did not invest this money as it accumulated, as was required of them by the terms of the will, and as it was their duty under the law to do, but racklessly and negligently mingled these funds with the funds of the trust company, and with funds of other trust estates in their keeping and custody, so that it has become impossible to segregate the property of the estate of D. J. Winn; and the trust company took no security or collateral to protect the trust estate from loss; that the defendants so commingled the moneys of the trust estate with the moneys of the trust company, of which they were stockholders and personally interested, in order to permit the trust company to use this money at a low rate of interest, and without security; and by such reckless and negligent management the moneys of the trust estate have been lost. The complaint alleges that, in order to ascertain the damage and losses to the trust estate by the various acts of omission and commission recklessly, negligently and illegally committed by the defendants in the various ways and manners set out in the three causes of action set out in the complaint, a long and complicated accounting will be necessary, but plaintiff alleges on information and belief, that such damages will amount to at least $25,000.00.

The prayer of the complaint is that defendants be required to account to plaintiff for the funds of the estate of D. James Winn, referred to in the complaint, with interest, and for judgment for the amount so found to be due which plaintiff alleges to be at least $25,000.00; and for such other and further relief as may be just and equitable.

The defendants G. A. Lemmon, C. G. Rowland, R. O. Purdy, P. M. Parrott, C. L. Stubbs, H. C. Haynsworth, Neill O'Donnell, T. H. Parker, W. W. Sibert, and A. C. Phelps jointly answered, setting up the defense submitted by way of demurrer, assert the appointment of the Sumter Trust Company in its corporate capacity as executor of the will of D. James Winn, deny that the Sumter Trust Company acted recklessly or negligently, or in any wise breached its duty as such executor, allege that the named defendants, as directors of the Sumter Trust Company, in all respects performed their duties as such directors, and specifically deny the allegations of negligence, and deny liability to plaintiff. They admit that Sumter Trust Company, as executor, liquidated certain assets of the Winn estate and sold certain personal property, but deny that the company acted recklessly or negligently. Deny generally the things not admitted.

George D. Levy filed a separate answer which differed from that just noticed only in that he denied that he had been the trust officer of the Sumter Trust Company at any time since the 1st of January, 1924.

I. C. Strauss and H. J. Harby jointly answered, their answer differing from that of Lemmon, Rowland et al., only in that they allege that, as officers and directors of the Sumter Trust Company, they in all respects discharged their duties, and deny all allegations of negligence and liability to plaintiff in any amount; and they deny that as such officers and directors they owed any legal duty to plaintiff, but were only liable to the corporation.

Nina M. Phelps, executrix, and A. C. Phelps, executor of the will of A. C. Phelps, and Elizabeth Lemmon, as executrix of the will of G. A. Lemmon, answered jointly, alleging that their testators have died since the occurrences set forth in the complaint, that these causes of action sound in tort, which causes of action do not survive the death of the alleged tort-feasors. In all other respects they adopt the answer of the other defendants.

April 5, 1929, Circuit Judge Ramage ordered that a special referee take and report the testimony. After the plaintiff had completed the taking of his testimony before the referee, the defendants interposed a demurrer to the complaint, which was heard and over-ruled by Judge Grimball. From his order an appeal was taken to this Court, and the opinion of this Court in disposing of the appeal is found in 159 S. C., 257; 156 S. E., 767, 769.

The gist of the demurrer is found in the pleas that the complaint does not state a cause of action against the defendants, because it does not show that the defendants owe any duty to the plaintiff, or that they have ever breached any duties which they owed to the plaintiff; that the complaint shows that, if any one has breached a duty owing to the plaintiff under the terms of the will of D. James Winn, it is the Sumter Trust Company; and that these defendants in all that they did in relation to the Winn estate were the agents of the Sumter Trust Company and have no fiduciary relationship to the plaintiff; that the statute laws of the State fix the liability of the Sumter Trust Company in regard to the matters and things set forth in the complaint, and the same is exclusive; that the law does not permit plaintiff to maintain such action against the directors of the bank for the causes set forth in the complaint, but, if such action is maintainable at all, it must be brought by the receivers of the Sumter Trust Company for the benefit of the depositors.

The Supreme Court affirmed the order over-ruling the demurrer, and specifically held that the complaint does state a cause of action against these defendants. In regard to the fourth ground of the demurrer, the Court used this language: *"We find nothing in the statutes, even by implication, which would tend to show that the General Assembly ever intended to relieve a corporation, acting as guardian, administrator, executor, or trustee, or the officers and directors of such corporation, from losses occurring because of*

*its or their negligence, mismanagement, or fraudulent acts in the handling of the trust estate.*" (Italics added.) Emphasis has been added to this quoted utterance of the Court because of its special aptness to the argument of the respondents in the present appeal.

After the case had been remanded to the Circuit Court, the defendants filed a supplemental answer by which they pleaded that the plaintiff had received, as a depositor of the Sumter Trust Company, dividends arising from the general funds of the Sumter Trust Company applicable to the claims of the depositors, and also his proportionate share of the funds arising from the enforcement of the stockholders' liability, and that plaintiff having received said funds without protest, is now precluded and estopped from further prosecuting this action, and has waived his right, if he ever had such right, to deny that the estate of D. James Winn was a depositor of the Sumter Trust Company with respect to the funds referred to in the complaint.

When the report of the special referee came in, the case was heard by his Honor, Judge Dennis, upon the evidence thus submitted. From his decree, which dismissed the case and ordered judgment of costs in favor of defendants, the plaintiff appeals.

There are twenty exceptions, and the briefs and arguments are voluminous, but appellant and respondents alike condense the questions to be answered by this Court into three—two on the part of appellant and one on the part of respondents. The appellant propounds these questions:

I. Does the evidence show negligence on the part of the respondents in the management of the Winn trust estate, and violation by respondents of the duty they owed such trust estate?

II. If so, is there legal liability on the part of the respondents to make good losses incurred by said trust estate by reason of such mismanagement?

The question propounded by respondents is: Does the evidence show such conduct on the part of the respondents

in the performance of their duties with regard to the Winn trust estate as to require a judgment against them in this action?

Necessarily, subsidiary questions grow out of these general ones, which must be answered. The arguments have taken a wide range, and there have been citations of many authorities, but it appears to the Court that the real issues are few, and that the apt and controlling authorities are not many; and that it will not be necessary to determine in detail each exception; but the judgment of the Court will encompass the consideration of all of them.

It will conduce to the orderly consideration of the case if we first consider a primary issue presented by resopndents, *viz.*, that this is an action at law, and not a suit in equity, and that, the Circuit Judge having found and held that the evidence shows that the defendants acted with ordinary prudence, judgment and foresight in all of their conduct, and that the defendants are not guilty of negligence nor wrongdoing in the handling of the Winn trust estate, and that the evidence did not disclose any liability on the part of respondents for the manner in which they handled such estate, these finding are binding on this Court and cannot be reviewed nor disturbed by it.

It is a significant fact that the question whether this is a case at law or a suit in equity was not raised in the Court below. The procedure was that usual in equity cases, a reference to take the testimony and a hearing thereon by the Chancellor. That it was considered to be a suit in equity was so declared by this Court in deciding the appeal on the demurrer. The opinion of the Chief Justice said: "The suit, on the equity side of the Court, demanded an accounting on the part of the defendants."

With that construction on the part of this Court as to the nature of the action, the case was tried in the Circuit Court. It seems late now to question it.

There is little contention over the material facts in this case. The findings of the Circuit Judge as to the results of these facts, whether they showed legal negligence or the like, is not the same as finding that the testimony does or does not show a certain state of facts. This Court in this case is passing upon the legal question whether the facts found by the Circuit Judge, and practically admitted, show legal liability on the part of the defendants. To say that this Court may not review these findings and conclusions is to circumscribe the appellate power of the Court to a degree never before suggested. Here is a case brought to hold trustees liable for losses arising, it is alleged, from the negligence, conversion, and mismanagement by the trustees of a trust fund created by will. It is argued that it is an action on the law side of the Court because the complaint alleges loss and damage to plaintiff growing out of the conduct of defendants. The argument is fallacious.

"There is an element of trust in the case, which, wherever it exists, always confers jurisdiction in equity." *Oelrichs v. Spain,* 15 Wall. (28 U. S.), 211, 228; 21 L. Ed., 43, 44.

"All possible trusts, whether express or implied, are within the jurisdiction of the Chancellor * * * the fact that the relief demanded is a recovery of money only is not important in deciding the question as to the jurisdiction of equity. * * *. It often happens that the final relief to be obtained by the *cestui que* trust consists in the recovery of money." 1 Pom. Eq. Jur. S., 158.

The cases of *Fant v. Brissey,* 150 S. C., 15; 147 S. E., 632, 635; *Peruvian Guano Co. v. Thompson,* 112 S. C., 377; 99 S. E., 808, establish that this is a case in equity.

In what circumstances do the officers and directors of a corporation become liable individually to one dealing with the corporation?

In the case of *Fant v. Brissey, supra,* this Court said: "There can be no controversy as to the proposition that a

cause of action against the directors of a bank *for losses to the bank,* as a result of the negligent mismanagement of the affairs of the bank by the directors, lies in the corporation, as an asset of the corporation, and that a creditor of the bank can sue only in the right of the corporation, after having taken the necessary steps to induce action by the officers of the corporation. That doctrine is clearly announced in the case of *Browne v. Hammett,* 133 S. C., 446; 131 S. E., 612. A distinction, however, is palpable between such a cause of action and one which is inherently a personal claim of a creditor on account of *wrong done to him, not to the corporation.* The distinction is clearly developed in the case of *Killen v. Barnes,* 106 Wis., 546; 82 N. W., 536: "There are numerous cases where the distinction has not been clearly recognized, if at all, between a wrong to a depositor of a bank committed by its officers, for which they are personally liable directly to such depositor on the ground of deceit, and a wrong by such officers to the corporation for which they are liable to such corporation and through it to the creditors, *Delano v. Case,* 121 Ill., 247; 12 N. E., 672; 2 Am. St. Rep., 81, is a good specimen of such cases.' "

In the case of *Stewart v. Ficken,* 151 S. C., 424, at page 426; 149 S. E., 164, 165, the Court said: "The first inquiry is as to what classes of individuals who have been burnt, or at least scorched by the failure of the bank, are entitled to relief against the directors for such mismanagement—general creditors, depositors, stockholders, any or all. It appears well settled that, if the mismanagement of the directors has caused a loss to *the corporation,* and not to any particular general creditor, depositor, or stockholder, the liability of the directors on account thereof is *an asset of the corporation,* remediable only by an action in the name or in the right (under the appropriate circumstances) of the corporation; *if the mismanagement of the directors has caused a particular loss to an individual general creditor, depositor, or stockholder, the liability is an asset of such injured in-*

*dividual, remediable by an action in his name."* (Italics added to this last portion.)

It does not need to cite other authorities to show that the established rule is that, when the mismanagement of the directors of a corporation causes a special loss to an individual creditor, depositor, or stockholder, the liability inheres as an asset of the individual creditor, depositor, or stockholder, which he may enforce by appropriate process.

■ What is the nature of the mismanagement by the officers and directors which gives rise to a personal liability on their part to an individual creditor?

"The managing officers of a corporation, who signed on its behalf a contract for the sale of plaintiff's fertilizer whereby it agreed to hold in trust and turn over to plaintiff the cash proceeds and notes received for such sale, but instead treated the proceeds as ordinary receipts of the corporation, are personally liable therefor to the plaintiff after the bankruptcy of the corporation." *Peruvian Guano Corp. v. Thompson, et al.,* 112 S. C., 377; 99 S. E., 808.

In the case of *Fant v. Brissey, et al., supra,* it appears that the directors of a bank which was, as administrator with the will annexed, trustee of a fund for the benefit of A. Davis Fant, through their negligence allowed the president of the bank to borrow heavily from the trust fund, when they knew he was heavily involved financially, and heavily indebted to the bank, in excess of what the law allowed; took from him inadequate security, made the loan without having the application and security submitted to and passed upon by the directors, or its loan board for them; had no approval in writing of the loan; all this when the bank was insolvent and on the verge of liquidation. They were held to be guilty of mismanagement of the affairs of the bank, and so negligent of their duties as directors of the bank as to render them individually liable for the loss to the trust estate which ensued from the loan.

It is needless to cite numerous authorities, we may, however, quote from the case of *Strauss v. United States Fidelity & Guaranty Company,* reported in (C. C. A.) 63 F. (2d) 174, 176, which grew out of the failure of the same, the Sumter Trust Company, and involved the question of the management of the trust fund of the China trust estate in its custody. The action which was heard in the United States District Court by his Honor, J. Lyles Glenn, District Judge, was brought by the United States Fidelity & Guaranty Company against the defendants, as directors of the Sumter Trust Company, who are the same as the defendants in this case, to recover the amount of money which the guaranty company had been called on to pay as surety on the bond of the trust company, as trustee under the will of A. J. China. The guaranty company had judgment. On appeal to the Circuit Court of Appeals the judgment was affirmed, and application for *writ of certiorari* was denied by the Supreme Court of the United States. 289 U. S., 747; 53 S. Ct., 690; 77 L. Ed., 1492. The facts disclosed by the evidence in that case, which were deemed by the Court sufficient to establish the liability of the directors, were succinctly stated as follows: That substantial sums of money belonging to the trust estate were not invested by the trust company, as trustee, in safe securities, but were deposited in the trust company as a bank, were mingled with other trust funds, and with the bank's commercial deposits, and were used in the ordinary commercial banking business of the trust company; commissions were charged on these trust funds, including the interest received by the trust company, as trustee, from itself; no security was given for the safe custody of the trust funds. The directors had knowledge of the manner in which the business was carried on, and of the fact that considerable sums of these trust funds were kept on hand uninvested for long periods. The funds of the various trust estates in the hands of the trust company were carried on a special book, known as the trust ledger, daily

statements showing these trust balances were laid before the directors at their weekly meetings; the State Bank Examiner in November, 1925, and June and October, 1926, expressed grave doubts of the value of the trust company's assets and of its solvency; the trust company closed its doors February 17, 1927; the trust officer of the company, who was a director, was personally interested in a trust fund of $27,000.00, which for years had been on deposit in the bank, had made an effort January 1, 1927, to withdraw this money by check, but was unable to do so; however, the trust company, with the approval of the board of directors, turned over to him certain assets of the bank as security for the trust fund.

Now the facts in the Winn trust estate, as gleaned from the evidence and as admitted, show that the estate consisted of valuable real estate in the City of Sumter, and certain bonds, mortgages, moneys, and other personal property. Soon after qualifying and assuming charge of the trust estate, defendants began to convert the assets of the trust estate by selling real estate, collecting mortgages, selling Liberty Bonds, until during the years from 1921 through 1926 they had accumulated approximately $20,000.00; no part of this sum was invested; on the contrary it was converted to the use of the trust company, of which defendants were directors; these funds were mingled with other trust funds in the hands of the trust company, and with the funds of the trust company itself, and were used by it in its banking business; for which use the trust company allowed the trust estate interest at a rate of about 4 per cent; the trust company charged commissions on the money it thus accumulated, including the interest which it paid itself. The trust company took no security for the funds of the trust estate which it thus had on hand; the trust estates in the hands of the company were listed in a book called the trust ledger, and a daily statement of these trust estates was laid before the directors at their weekly board meetings; the State Bank Ex-

aminer in November 1925, and June and October, 1926, warned the defendants that he had fears of the safety and solvency of the institution. Yet during these last two years the defendants collected and deposited large sums of the trust funds amounting to about $10,000.00 in their own company and used them in the business of the company. The assets of the Winn trust estate were, through the mismanagreement of the defendants, so inseparably intermingled with those of the other trust estates in its custody, and with its own assets, as to make it impossible to segregate the assets and the funds of the Winn trust estate. Less than two months before the company closed its doors, it set aside assets to protect other trust funds in its custody in which some of the defendants were interested.

The United States District and Circuit Courts found that mismanagement of the China estate fixed liability on the officers and directors of the Sumter Trust Company.

Here is a candition, perhaps a more aggravated one, similar to that disclosed in the narrative of the condition of the China trust estate, which was in the custody and control of the Sumter Trust Company, and which was passed upon in the case of *Strauss v. United States Fidelity & Guaranty Company, supra.* In that case, the District Court in its opinion, said: "The admitted conduct of the defendants here amounts in the effect to their lending these trust funds to their own corporation for its own uses, and that without any specific security whatsoever. The situation is aggravated by the fact that the defendants allowed these funds to be used in their company's business and to remain uninvested over periods of years, and after the condition of the company was being severely criticized by the Bank Examiner's Department, and the solvency of the company was becoming more and more doubtful, and further by the fact that during the last few weeks of the company's operations, the defendants had specific securities set aside to protect certain funds in which they, or some of them, were personally interested.

Such conduct seems to this Court to be in violation of the first principles of the handling of trust funds."

The Circuit Court of Appeals said of this utterance: "We are in full accord with this conclusion; for the findings of fact of the trial Court disclose not merely a violation of the general rule that a trustee must not mingle the trust funds with his own, but also a failure to exercise ordinary care in the selection of a safe depository for the moneys of the estate."

It would seem to be a work of supererogation to quote authorities to declare the rule which fixes the duty of one charged with handling trust funds; that rule is one of general application and is well known. These few citations will suffice: "The authorities cited in the latter of the Circuit decrees under consideration demonstrate, that the first duty of a trustee is to put the estate committed to him in a state of security. Equity and common sense require that he should be unbiased in the discharge of his primary duty. His beneficiaries are entitled to the exercise of this independent, impartial, judgment; but this is impossible if he lend to himself. All the reasons which inhibit a trustee to sell from buying at his own sale, exact with equal force that a trustee to lend shall not borrow from himself." *Spear v. Spear,* 9 Rich. Eq., 198.

This case cites with approval the case of *Mulligan v. Wallace,* 3 Rich. Eq., 111, in which it is said: "This is a rule, founded on policy, and of general application, and not depending upon the fairness or fraud of particular transactions. A trustee to sell, is forbidden to purchase at his own sale, however full may be the price he offers, and however frank and honest may be his conduct; and so a trustee to lend, shall not make the loan to himself, nor in lending to another, substitute his own 'rights and credits' for the trust money."

The rule is universally acknowledged and followed.

The Circuit decree from which the appeal comes holds and respondent's counsel argue, that the ruling of this Court announced in the case of *Ex parte Michie,* 167 S. C., 1; 165 S. E., 359, is authority for the course pursued by the defendants in this case in handling the funds of the Winn trust estate.

The argument in support of this proposition is urged with force and ingenuity, but it will not stand the test of logic and analysis. The cases are not in analogy of fact or of applicable law.

. In the *Michie case* the funds of the Michie estate were already in the bank which was named executor of the Michie will; had been deposited there by Mr. Michie himself. When the bank qualified as executor, it simply transferred the account on the books from Mr. Michie to itself as executor. The bank qualified as executor June 6, 1928. It closed its doors the 30th day of October, 1928, six months after qualifying. The bank renounced the executorship and another was substituted. The substituted executor brought action to have declared a preference in favor of the estate over the general creditors and depositors in the general assets of the bank, on the ground that it had mingled the funds of the estate with its own funds, and thus committed a breach of trust.

This Court held that the bank, as executor of the estate, had the right to keep on hand funds necessary to defray current expenses of the estate and preferred claims, and that under the statute law of the State, as it then stood, the estate was not entitled to a preference because the bank received funds of the estate and mingled them with its own. But nowhere does the opinion hold that, if the bank as executor had by its mismanagement and negligence caused loss to the estate, it would not have been liable to make good the loss. In the *Michie case* no express trust was created by the will. In the case now before the Court the will of D. James Winn appointed the Sumter Trust Company trustee

of an express trust and directed the application of the income therefrom. Nowhere in the *Michie case* is there an utterance which can be properly construed to hold that the trustee of this express trust had the right or authority to mingle the trust funds with other trust funds, and use them in its banking business, allow the trust estate an inadequate rate of interest therefor, and hold such funds indefinitely, unsecured and uninvested. Nowhere in the *Michie case* is there found authority for a trustee to disregard the plain mandate of the law that he shall make safe the funds intrusted to him, by wise and proper security.

This same issue was made in *Strauss v. United States Fidelity & Guaranty Company, supra* and the Circuit Court of Appeals thus disposed of it:

"We think also that the facts of the case permit the application of the salutary rule that if a trustee mingles trust funds with his own, and the mingling is followed by loss, accidentally or otherwise, he must make it good. * * * We are told that although this rule was generally observed elsewhere, it was not in effect in South Carolina under the Act of 1911 as to banks and trust companies acting as trustees. The Act was referred to by the Supreme Court of South Carolina in the case of *Ex parte Michie,* 167 S. C., 1; 165 S. E., 359, and this decision is cited as showing that the general rule applicable to the trustees was relaxed by the statute in South Carolina as to state banks and trust companies, so as to legalize the course of conduct pursued by the trust company in this case. *We do not so understand the decision.* The bank in that case qualified as executor of Michie's estate on June 6, 1928, and transferred a sum of money standing in the name of Michie on its books to its own name as trustee. It had a year under the South Carolina statutes to settle and distribute the estate, but it became insolvent and closed its doors on October 30, 1928. *The Court held that as executor of the estate, the bank had the right to keep on hand funds necessary to defray current expenses of*

*the estate and preferred claims, and that the estate was not entitled to a preferred claim upon the assets of the insolvent bank on the ground that the bank had received the funds in trust and committed a breach of trust by mingling them with its own funds.*

"The Court was intent upon showing that under the circumstances before it, the trust estate was not entitled to a preference, *even under the rule prevailing in South Carolina.* \* \* \*

"The Court was of the opinion in the *Michie case* that the facts did not disclose any element of bad faith or moral wrong which would create a trust *ex maleficio* merely because of the transfer of the funds already on deposit in the bank, and the retention of them in its general funds for the short period preceding its insolvency." (All italics added.)

The Court of Appeals, after discussing the Act of the Legislature of South Carolina of 1930 (Code 1932, §§ 7905-7910), regulating the duty of banks acting as executors, administrators, guardians, etc., said:

"*From the absence of similar definite provisions in the Act of 1911, it was inferred that the Legislature recognized the right of a financial institution, acting as trustee, to deposit funds in its own bank; but this is the utmost extent to which the opinion goes. It is far from holding that while the Act of 1911 was in effect, a trust company acting in a fiduciary capacity, could keep trust funds in a general deposit in its own bank for a long period, without liability for losses occurring in the course of the business of the institution.* \* \* \* (Italics added.)

"Beneficiaries of trust estates have been afforded a greater protection under the rules enunciated by the Supreme Court of South Carolina than they enjoy in most jurisdictions; and it is not reasonable to conclude that the Act of 1911 will be interpreted so as to relieve corporate trustees from a strict accountability for the property committed to their custody.

"Moreover, it is important to remember that the Supreme Court was dealing in the *Michie case* only with the relative rights of the beneficiaries of trust estates and the general creditors of an insolvent trustee. The question now under discussion is the liability of a corporate trustee, under the Act of 1911, which mingled trust funds with its own and lost them, to make good the loss, even in the absence of fraud or negligence."

These excerpts from the opinion of the Court of Appeals demonstrate that that Court has correctly construed the opinion of this Court in the *Michie case,* and that that construction is not in harmony with that for which respondents contend.

The Circuit decree does not determine the question whether the plaintiff by accepting a proportionate share of the stockholder's liability fund has made an election which estops him from maintaining this action, but since it was adverted to in argument it is not amiss to say that the matter is determined adversely to respondents' position by the case of *Strauss v. United States Fidelity & Guaranty Company, supra,* and that of *Ex parte Hernlen,* 156 S. C., 181; 153 S. E., 133; 69 A. L. R., 443.

There is no charge nor intimation of fraud or moral wrong against the defendants, who are men of high character and standing. The gravamen of the charge is that by their negligence and mismanagement of the trust committed to the Sumter Trust Company, of which they were the directors, charged with supervision over and direction of its affairs, they have occasioned loss to the estate. The conclusion is inescapable that the charge is sustained by the evidence.

It is the judgment of the Court that the decree of the Circuit Court be reversed.

That the case be remanded to the Circuit Court to take the necessary steps to ascertain the amount due the plaintiff as substituted trustee under the will of D. James Winn, de-

ceased, and, when so ascertained, let judgment therefor be entered in his favor against the defendants.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES STABLER and CARTER and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.

## ON PETITION FOR REHEARING

*Per Curiam:*

The petition for rehearing is predicated upon the proposition that the opinion of this Court does not specifically decide the contention that this is an action at law seeking damages for a tort, and that the right of action in such case does not survive the death of the tortfeasor, and that Mrs. Lemmon's testator had died since the institution of the action.

The opinion specifically holds that this is a suit in equity; therefore, it could not be an action at law, and the question of the survival of the right of action could not arise. When this matter came before this Court on appeal from the order of the Circuit Court overruling the demurrer, both sides to the litigation treated the case as one in equity. Indeed, the defendants insisted that it was; and this Court held that it was a suit in equity. The case was tried as one in equity, and our opinion holds that it was such an one. That is the law of this case. That necessarily disposes of the issue made by the petition for rehearing that the action is one at law sounding in damages for a tort which right of action does not survive the death of the tort-feasor.

The petition for rehearing is denied.