### EQUITABLE TRUST COMPANY OF COLUMBIA v. COLUMBIA NATIONAL BANK *ET AL.*

#### (142 S. E., 811)

1. BANKS AND BANKING—EVIDENCE THAT CORPORATE OFFICERS, ALSO OFFICERS OF BANK, WHO SOLD ASSETS OF CORPORATION TO BANK HAD KNOWLEDGE OF PLAINTIFF'S INTEREST AS STOCKHOLDER, HELD ADMISSIBLE.—In action by stockholder of investment company for damages for conversion by sale of entire assets of corporation to bank, evidence *held* to show that officers of the investment company, who were also officers of bank, were acting for bank within scope of their authority and not adversely to interest of bank in sale of assets, and hence their actions were binding on bank, and evidence was admissible to show that such officers knew of interest of plaintiff as stockholder.

2. CORPORATIONS—FACTS AND CIRCUMSTANCES HELD TO ENTITLE STOCKHOLDER TO SUE IN ITS OWN NAME FOR DAMAGES FOR CONVERSION BY SALE OF ENTIRE CORPORATE ASSETS.—In stockholder's action for damages for conversion by sale of entire corporate assets to bank by corporate officers who were also officers of bank, plaintiff's allegations of facts and circumstances *held* to show that plaintiff's rights and interest had been injured, and that an appeal for redress to governing body of corporation would have been useless, entitling plaintiff to maintain its action in its own name and benefit.

3. CORPORATIONS—ENTRY OF TRANSFER OF STOCK BY INDORSEMENT IN BLANK UPON CORPORATE BOOKS WAS NOT NECESSARY AS BETWEEN PARTIES (CIV. CODE 1922, § 4320).—Under Civ. Code 1922, § 4320, where certificate of stock was issued to officer of corporation and by him indorsed in blank to plaintiff, it clearly being the intention of the parties that the legal title should pass, no entry upon the books of the corporation was necessary as between the parties.

4. CORPORATIONS—FAILURE TO HAVE TRANSFER OF STOCK ENTERED UPON CORPORATE BOOKS DOES NOT WORK ESTOPPEL, IN ABSENCE OF PLEDGE OR SALE BY TRANSFEROR.—Failure of plaintiff, to whom stock was indorsed in blank, to have entry made upon books of corporation, did not work an estoppel as between the parties, where there was no evidence that transferor of stock disposed of certificate by pledge or sale to any other party.

5. BANKS AND BANKING—WHERE OFFICERS OF CORPORATION SELLING ENTIRE ASSETS TO BANK WERE ALSO OFFICERS OF BANK, BANK WAS NOT INNOCENT PURCHASER FOR VALUE WITHOUT NOTICE.—

Where sole officers of corporation selling its entire assets to bank were also officers of bank, thus imputing to bank such officers' knowledge of plaintiff's interest as stockholder in the corporation, *held* that bank was not innocent purchaser for value, without notice, of assets of the corporation.

6. CORPORATIONS—CONSTRUCTIVE KNOWLEDGE OF STOCKHOLDER'S AGENT HELD NOT IMPUTABLE TO STOCKHOLDER, ESTOPPING IT FROM MAINTAINING ACTION BY REASON OF SALE OF ENTIRE CORPORATE ASSETS. —In action by stockholder for damages for conversion by sale of entire assets of corporation to bank, that plaintiff's agent in purchase of stock was also director of bank did not impute to plaintiff alleged constructive knowledge of agent so as to estop plaintiff from maintaining action; there being no showing of actual knowledge by such agent.

7. CORPORATIONS—THAT DEFENDANTS, IN ACTION BY STOCKHOLDER FOR DAMAGES BY SALE OF ENTIRE CORPORATE ASSETS, ALSO SUFFERED LOSS, IS NO DEFENSE.—In action by stockholder against corporation and bank for damages for conversion by sale of entire corporate assets to bank, fact that defendants also lost by the transaction is no defense.

8. CORPORATIONS—MOTION FOR NONSUIT AND DIRECTED VERDICT, ON GROUND THAT ACT WAS ULTRA VIRES, WAS PROPERLY REFUSED, WHERE THERE WAS NEITHER PLEA NOR PROOF THEREOF.—In action by stockholder for damages for conversion by sale of entire corporate assets to bank, defendant's motion for nonsuit and directed verdict on ground that penalty for an *ultra vires* act is not the redemption of stock, was not error, where there was neither plea nor proof of *ultra vires* act.

9. CORPORATIONS—FAILURE TO GIVE MINORITY STOCKHOLDER NOTICE OF SALE OF ENTIRE CORPORATE ASSETS HELD NOT EXCUSABLE ON GROUND THAT SALE COULD NOT HAVE BEEN PREVENTED.—Failure to give minority stockholder notice of sale of entire corporate assets is not excusable on ground that, even if notice had been given, sale could not have been prevented, since by failing to give notice minority stockholder was prevented from availing itself of any of the well-recognized remedies.

10. BANKS AND BANKING—BANK TAKING OVER ASSETS OF ANOTHER BANK HELD UNDER FACTS NOT BONA FIDE PURCHASER FOR VALUE WITHOUT NOTICE.—Where bank purchasing entire assets of corporation knew of plaintiff's ownership of stock in such corporation, *held* that bank taking over assets and assuming liabilities of purchasing bank, and having some of the same officers as such other bank, was charged with such knowledge, precluding it from plea

of *bona fide* purchaser for value without notice, and making it a party to such fraudulent transaction.

11. CORPORATIONS—APPROPRIATION BY BANK OF CORPORATE ASSETS, KNOWING OF PLAINTIFF'S RIGHTS AS STOCKHOLDER, WAS A CONVERSION OF PLAINTIFF'S STOCK.—Where bank, knowing of plaintiff's interest as stockholder, without legal authority took over entire assets of corporation and appropriated such assets in payment of alleged indebtedness to bank by corporation, it constituted a conversion of plaintiff's stock.

12. CORPORATIONS—IN STOCKHOLDER'S ACTION FOR DAMAGES FOR ·CONVERSION BY SALE OF ENTIRE CORPORATE ASSETS, EVIDENCE HELD TO WARRANT SUBMISSION OF ISSUE OF PUNITIVE DAMAGES.—In action by stockholder for damages for conversion by sale of entire corporate assets to bank, which assets were later taken over by another bank, evidence *held* to show willful, wanton, or malicious conduct on part of defendant in selling and disposing of such corporate assets, knowing of plaintiff's rights as stockholder, warranting submission of question of punitive damages to jury.

Before TOWNSEND, J., Richland, May, 1925.    Affirmed.

Action by the Equitable ·Trust Company of Columbia against the Columbia National Bank, the Palmetto National Bank of Columbia, and another. Judgment for plaintiff, and named defendants appeal.

Following are the charge of the Circuit Judge and the exceptions:

### JUDGE'S CHARGE TO THE JURY

Mr. Foreman and gentlemen of the jury, the plaintiff, Equitable Trust Company, claims it was in 1920, and still is, the owner of 25 shares of the capital stock of the Commercial Investment Company, which it claims to have acquired by purchase for $25,000 in that year. The defendants deny these claims, and the burden is on plaintiff to prove such ownership, by the greater weight of the evidence. If the Equitable Trust Company never became or is not the owner of any stock in the Commercial Investment Company, it can recover nothing in this action, and in such case, your verdict should be in favor of the defendants.

If the Equitable Trust Company is the owner of the 25 shares, the next issue to be determined by you is whether or not any one of the defendants sued; that is, the Palmetto National Bank, or the Columbia National Bank, converted any interest in the lot and building described in the complaint, belonging to the Equitable Trust Company, as a stockholder in the Commercial Investment Company.

A conversion is an exercise of dominion and control over property inconsistent with, or in denial of, the rights of the true owner. It is wrongful exercise of such a claim or right or dominion over the property as assumes that the claimant is entitled to the possession or to deprive another party of it. The very assuming to one's self the property and right of disposing of another man's goods is a conversion.

It is admitted that in 1920 the Commercial Investment Company owned the lot and buildings described in the complaint, subject to the lien of mortgages thereon—the amount due on which is to be ascertained from the evidence.

The defendants admit that in 1922 the Palmetto National Bank owned nine-tenths of the stock in the investment company, and claim that in June, 1922, the investment company owed the Palmetto National Bank $208,108.01, and that the investment company then conveyed said lot and building to the said bank in satisfaction of said debt due the said bank.

The plaintiff claims that said bank conveyed said property to itself, in satisfaction of its own claims, without notice to, or consent of plaintiff, and in conscious violation of the known rights of the plaintiff.

If the plaintiff was then the owner of 25 shares of the capital stock of the investment company and the Palmetto National Bank then owned the remaining stock and then knew that the plaintiff owned the minority stock in the investment company, and, so knowing, in violation of known rights of the plaintiff, undertook as owner of the majority

stock to convey to the bank all the property of the investment company, in settlement of a debt due the bank without notice to, or consent of, the plaintiff, such conduct on the part of the Palmetto National Bank, in conscious violation of known rights of the plaintiff, if the plaintiff had such rights, would amount to a wrong and a conversion of the property in violation of plaintiff's rights, and would entitle the plaintiff to recover as damages against the wrongdoer such sum as would compensate the plaintiff for any loss thereby occasioned it. If the plaintiff proves that either defendant, or both defendants, have converted any property or interest in property belonging to plaintiff, mentioned in the complaint, then the plaintiff should prove that it has been injured or lost something of value by reason of such conversion. The measure of actual damages in case of property converted is the value of the property converted and lost to the owner. And, in case of a willful conversion, the jury may take the highest value of the property converted between the time of the conversion and the time of trial as the measure of damages.

Under the agreement in evidence dated 16th of July, 1923, between the Palmetto National Bank and the Columbia National Bank, the Palmetto National Bank turned over all its assets to the Columbia National Bank in consideration of the Columbia National Bank assuming the payment of all of the debts and other liabilities of every kind, nature, and description of the Palmetto National Bank, as shown by the books of that bank, other than the liability to the stockholders as such. But this assumption of liability in said written contract does not render the Columbia National Bank liable to plaintiff on the claim now sued on, as this claim or liability is not shown by the books of the bank, as required by said agreement.

The lot and building in question was conveyed by the Palmetto National Bank to the Columbia National Bank under the said agreement of the 16th of July, 1923, and

under such conveyance the Columbia National Bank acquired whatever title and rights were then held by the Palmetto National Bank in said lot and building.

It is admitted that in June or July, 1924, the Columbia National Bank sold the lot and building in question to Mauldin and Matthews, and subsequently conveyed the lot to their assignee. If the plaintiff was, when such sale was made, and is, the owner of the 25 shares of stock in the Commercial Investment Company, and the conveyance of the lot and building had been made in violation of known rights of plaintiff to the Palmetto National Bank by itself in satisfaction of a debt due it without notice to or consent of the plaintiff, then the plaintiff would still have an interest in the property which it might have asserted in the Courts, and if the Columbia National Bank knew, or had notice, of the interest of the plaintiff in said property, when it sold same to Mauldin and Matthews, then, if such sale was made by the Columbia National Bank in conscious violation of known rights of the plaintiff, then such sale would amount to a conversion, and would entitle the plaintiff to recover from the Columbia National Bank such damages as would compensate the plaintiff for any injury thereby caused to it.

If either the Palmetto National Bank or the Columbia National Bank, or both of them, have been guilty of converting property belonging to plaintiff as alleged in the complaint willfully, in conscious violation of known rights of plaintiff, then the defendant so guilty would be liable, not only for any actual damages occasioned by the conversion to plaintiff, to be measured by the market value of the property or interest converted, at such time as the jury may select between the time of the conversion and of this trial, but also for such punitive damages as the jury may find from the evidence would be proper punishment for a defendant found guilty of such willful conversion.

If you find the plaintiff is entitled to recover damages against both the Palmetto National Bank and the Columbia

National Bank, the form of your verdict would be, "We find for plaintiff so many dollars, stating the amount, actual damages"; and, if you find plaintiff is also entitled to recover punitive damages against both defendants, you would add, "and so many dollars, punitive damages," stating the amounts, if you find any, of actual and punitive damages separately.

If you find one of the banks liable for damages, but not the other, name in your verdict the one you may find liable.

If you find neither bank liable to plaintiff, the form of your verdict would be, "We find for defendants."

Now whatever verdict you find, write it on the back of this blue paper, marked "Summons and Complaint."

I was going to give you an envelope, so that you could bring in a sealed verdict on Friday morning, but I will wait on you a little while to see if you will agree. Now, should you be detained longer than I am here, I will give you an envelope, so that, when you arrive at a verdict, you could put it in an envelope, seal it up, and come back Friday morning, and if, in your deliberation, you find that you should need any further instructions, or if you have any difficulty in agreeing, you may communicate same to me, and I will come back.

Mr. McLain: My understanding is, that I should call your attention to the issues, so that you may charge certain things—

The Court: Yes, sir.

Mr. McLain: I did not hear you charge the jury anything about estoppel or laches.

The Court: I will charge that to them now, but you should have directed my attention to it by a written request to charge.

Mr. McLain: I don't think so.

The Court: All right, sir. If you find that the Equitable Trust Company was the owner of the 25 shares of stock in the Commercial Investment Company, claimed by it, and

find that the defendants or either of them have disposed of the property or interest belonging to the plaintiff in violation of the rights of the plaintiff, and if you should, further find that Equitable Trust Company or its officers or agents, acting for it, was guilty of any act or conduct which misled the defendants into making the sale in question, then such conduct on the part of the Equitable Trust Company would estop them from claiming damages. Is that the only issue that you raise, Mr. McLain?

Mr. McLain: Yes, sir.

The Court: As to estoppel, I think that covers it. You can retire, Mr. Foreman and gentlemen, and consider your verdict.

## EXCEPTIONS

The defendants Columbia National Bank individually and as liquidating agent of the Palmetto National Bank of Columbia, the Palmetto National Bank of Columbia, and the Commercial Investment Company, except upon the following grounds:

1. Because the presiding Judge erred in permitting the witness, A. M. Lumpkin, to testify as to certain conversations with and facts communicated to J. P. Matthews with reference to the organization of the Commercial Investment Company and the interest of the plaintiff as a stockholder therein, on the ground that, since said Matthews was president of the defendant Palmetto National Bank of Columbia, knowledge communicated to him was imputable to said bank; whereas his Honor should have excluded such testimony for the reason that the said Matthews at the time in question was acting in his own behalf or on behalf of the Commercial Investment Company and not for the defendant, Palmetto National Bank of Columbia, and that, under the circumstances any knowledge acquired by the said Matthews during the organization of the Commercial Investment Company or its subsequent operation could not be imputed to the

defendant Palmetto National Bank of Columbia, or the defendant Columbia National Bank, or either of them.

2. Because the presiding Judge erred in refusing defendants' motion for nonsuit, made upon the following ground: "That the action should be against the Commercial Investment Company or its stockholders and directors, or at best to set aside the deed of the Commercial Company to the Palmetto National Bank and have an accounting, and that a suit for damages under the evidence brought out in this case will not lie against either of these banks"—whereas his Honor should have granted said motion, because: ·

(a) The title to the property in question was in the corporation (the Commercial Investment Company) and not in the plaintiff, and plaintiff as a stockholder has no right to assert a cause of action belonging to the corporation or to maintain an action at law for damages for a tort or wrong done to the corporation.

(b) The evidence showed that the injury complained of, if any, was a wrong done the corporation for which the plaintiff's remedy as a minority stockholder, if he had any remedy, was an action for damages against the stockholders and directors of the Commercial Investment Company who conveyed the property to the Palmetto National Bank, or against them for an accounting, and in no view of the case made by the testimony could the plaintiff as a stockholder maintain an action at law for damages for conversion of property belonging to the corporation of which it was a stockholder.

(c) The cause of action set up by the plaintiff is one in tort for damages for conversion, and such an action does not lie for an exercise of dominion or control over real property or the assumption of the right to dispose of the same, even though the exercise of such dominion or the assumption of such right is in denial of the rights of the true owner.

(d) The evidence shows that the title to the property alleged to have been converted was in the corporation, the

Commercial Investment Company, and that plaintiff had no title to the same, and hence could not maintain an action for damages for its alleged conversion.

(e) The title or interest of the plaintiff, if it had any title or interest in the property in question, was equitable in its nature, and an equitable title will not support an action for conversion.

3. Because the presiding Judge erred in refusing defendant's motion for a directed verdict, made upon the ground: "That the action should be against the Commercial Investment Company or its stockholders or directors, or at best to set aside the deed of the Commercial Investment Company to the Palmetto National Bank and have an accounting, and that a suit for damages under the evidence brought out in this case will not lie against either of these banks"—whereas his Honor should have granted said motion, because:

(a) The title to the property in question was in the corporation, the Commercial Investment Company, and not in the plaintiff, and plaintiff as a stockholder has no right to assert a cause of action belonging to the corporation or to maintain an action at law for damages for a tort or wrong done to the corporation.

(b) The evidence showed that the injury complained of, if any, was a wrong done the corporation for which the plaintiff's remedy as a minority stockholder, if he had any remedy, was an action for damages against the stockholders and directors of the Commercial Investment Company who conveyed the property to the Palmetto National Bank, or against them for an accounting, and in no view of the case made by the testimony could the plaintiff as a stockholder maintain an action at law for damages for conversion of property belonging to the corporation of which it was a stockholder.

(c) The cause of action set up by the plaintiff is one in tort for damages for conversion and such an action does not lie for an exercise of dominion or control over real prop-

erty or the assumption of the right to dispose of the same, even though the exercise of such dominion or the assumption of such right is in denial of the rights of the true owner.

(d) The evidence shows that the title to the property alleged to have been converted was in the corporation, the Commercial Investment Company, and that plaintiff had no title to the same and hence could not maintain an action for damages for its alleged conversion.

(e) The title or interest of the plaintiff, if it had any title or interest, in the property in question, was equitable in its nature and an equitable title will not support an action for conversion.

4. Because the presiding Judge erred in refusing defendants' motion for nonsuit and for a directed verdict, made upon the ground: "That the stockholders or directors of the Commercial Investment Company necessarily authorized the giving of the deed of the Commercial Investment Company to the Palmetto National Bank; that therefore any failure to send out notice as alleged in the complaint could not be any grounds for a cause of action"—whereas his Honor should have granted said motion for the reasons therein stated.

5. Because the presiding Judge erred in refusing defendants' motion for nonsuit and for a directed verdict, made upon the ground: "That there has never been a transfer on the books of the Commercial Investment Company of the stock owned either by Mr. Lumpkin or the Equitable Trust Company, or whoever it might be, and, therefore, whatever person or persons were in charge of the Commercial Invesment Company's business had no notice of the persons to whom the notice was necessary, except to Mr. Matthews and Mr. Mauldin, as the certificates were issued to Mr. Matthews or Mr. Mauldin, and had never been transferred"—whereas his Honor should have granted said motion for the reasons therein stated.

6. Because the presiding Judge erred in refusing defendants' motion for nonsuit and for a directed verdict, made upon the ground: "The Equitable Trust Company, whom Mr. Lumpkin represented, as agent, is estopped by his knowledge or the knowledge that he could have obtained as·a director of the Palmetto National Bank of all these transactions"—whereas his Honor should have granted said motion for the reasons therein stated.

7. Because the presiding Judge erred in refusing defendants' motion for nonsuit and for a directed verdict made upon the ground: "That there has been a loss to all parties concerned, according to the testimony, and there is no more loss to Mr. Lumpkin than to any of the others"—whereas his Honor should have granted said motion for the reasons therein stated.

8. Because the presiding Judge erred in refusing defendants' motion for nonsuit and for a directed verdict, made upon the ground: "That the action of Messrs. Matthews and Mauldin, who were officers and directors of the Commercial Investment Company, could not bind the Palmetto National Bank, although they were officers of that bank"—whereas his Honor should have granted said motion for the reasons therein stated.

9. Because the presiding Judge erred in refusing defendants' motion for nonsuit and for a directed verdict, made upon the ground: "That the penalty for an *ultra vires* act is not the redemption of the stock; you cannot have your stock redeemed in a corporation for every *ultra vires* act of corporation"—whereas his Honor should have granted said motion for the reasons therein stated.

10. Because the presiding Judge erred in refusing defendants' motion for nonsuit and for a directed verdict, made upon the ground: "That, even if Mr. Lumpkin had been given notice, he could not have prevented the sale under the terms and conditions of which it was made, for he only

owned 10 per cent. of the stock, and the other stockholders would have outvoted him"—whereas his Honor should have granted said motion for the reasons therein stated.

11. Because the presiding Judge erred in charging the jury: "If the plaintiff was then owner of 25 shares of the capital stock of the investment company, and the Palmetto National Bank then owned the remaining stock and then knew that the plaintiff owned the minority stock in the investment company, and, so knowing in violation of known rights of the plaintiff, undertook as owner of the majority stock to convey to the bank all the property of the investment company, in settlement of a debt due the bank, without notice to, or consent of, the plaintiff, such conduct on the part of the Palmetto National Bank, in conscious violation of known rights of the plaintiff, if the plaintiff had such rights, would amount to a wrong and a conversion of the property in violation of plaintiff's rights, and would entitle the plaintiff to recover as damages against the wrongdoer such sum as would compensate the plaintiff for any loss thereby occasioned it"—the error being:

(a) It was erroneous and improper to submit any question of recovery of damages for conversion, when it appeared that the property alleged to have been converted was real property, and hence not the subject of conversion.

(b) Because the evidence showed that the title to the property alleged to have been converted was in the corporation, Commercial Investment Company, and not in the plaintiff, and hence plaintiff was not entitled to recover damages upon the theory of a conversion.

(c) Because the plaintiff's interest, if any, in the property, was equitable in its nature, and an equitable title will not support an action for conversion.

(d) Because the conveyance of the property by the Columbia National Bank, with knowledge of the alleged rights of the plaintiff brought home to it after it had acquired the

property in good faith would not amount to a conversion of the property in violation of plaintiff's rights or entitle the plaintiff to recover upon the theory of conversion.

12. That the presiding Judge erred in charging the jury: "If either the Palmetto National Bank or Columbia National Bank, or both of them had been guilty of converting the property belonging to the plaintiff, as alleged in the complaint, willful, in conscious violation of the known rights of plaintiff, then the defendant so guilty would be liable not only for actual damages, * * * but also for such punitive damages as the jury may find from the evidence would be proper punishment for the defendant found guilty of such conversion"—because under the evidence the plaintiff had no cause of action sounding in tort, and it was therefore erroneous and improper to submit any question of punitive damages to the jury.

13. That the presiding Judge erred in refusing defendants' motion for a directed verdict as to punitive damages because there was no evidence of any willful, wanton, or malicious conduct on the part of the defendants, or either of them, and therefore there was no basis for submitting the issue of punitive damages to the jury.

The defendant, Columbia National Bank, makes the following additional exceptions on its own behalf, to wit:

14. Because the presiding Judge erred in overruling the motion for nonsuit made on behalf of Columbia National Bank, and ruling as follows: "If there was an outstanding liability in the Palmetto National Bank as now claimed by the plaintiff, the books of the Palmetto National Bank don't show such outstanding liability. Therefore the plaintiff would have no right to recover from the Columbia National Bank under the terms of this agreement of July 16, 1923, but, if the Columbia National Bank, while holding the house and lot in question, conveyed to it by the Palmetto National Bank, received notice from the plaintiff, or its attorney, of the plaintiff's rights in the property, and after receiving such

notice sold it to a third party in violation of the rights of the plaintiff, such conduct on the part of the Columbia National Bank after notice of the plaintiff's rights would amount to a conversion by it and render it liable for damages growing out of such conversion"—the error being that notice acquired or brought home to the Columbia National Bank, after it had acquired the property as a purchaser for value in good faith and without notice of the plaintiff's alleged interest in the property, could not affect its rights to convey such property to a third party, and the conveyance by it of such property to a third person could in no sense amount to a conversion by it or render it liable for damages growing out of such conversion.

15. Because the Court erred in charging the jury as follows: "If the Columbia Bank knew, or had notice, of the interest of the plaintiff in said property when it sold same to Mauldin and Matthews, then, if such sale was made by the Columbia National Bank in conscious violation of known rights of the plaintiff, then such sale would amount to a conversion, and would entitle the plaintiff to recover from Columbia National Bank such damages as would compensate the plaintiff any injury caused thereby"—the error being that a sale made under the circumstances stated would not amount to a conversion, and would not entitle the plaintiff to recover damages for the alleged conversion, because:

(a) The title to the property was in the corporation, Commercial Investment Company, and the plaintiff as a stockholder therein has no standing to maintain an action for damages done to property belonging to the corporation.

(b) Because the title or interest of the plaintiff, if any, in the property in question, was equitable in its nature, and an equitable title will not support an action for conversion.

(c) Because the property alleged to have been converted was real property; hence not properly the subject of an action for conversion.

(d) Because knowledge or notice of the plaintiff's claim to an interest in the property, which was not brought home to the defendant, Columbia National Bank until after it had purchased or acquired the property for a valuable consideration and without notice of any claim of plaintiff, could not affect the said bank's right to dispose of the property or convert the disposal or transfer of the same by the bank into a conversion.

*Messrs. Elliott & McLain,* for appellants, cite: *When knowledge acquired by agent not imputed to principal:* Fletcher Cyc. Corp., Secs. 2218, 2219, 2235, 2245; 170 U. S., 133; 42 L. Ed., 977; 50 S. C., 259; 33 S. C., 451; 10 L. R. A., 705; 40 S. C., 151; 55 S. C., 9; 127 S. E., 562; 74 S. C., 374; 119 S. C., 39; 105 S. C., 100; 129 S. C., 531. *Remedies of minority stockholders:* Fletcher, Secs. 4025, 4051; 105 S. C., 525. *Transfer of stock on books of corporation:* Fletcher, Sec. 3789. *Effect of unregistered transfers as against purchasers or pledgees from apparent owners:* Fletcher, Sec. 3815; 11 S. C., 486; 115 S. C., 17; 79 S. C., 1; 50 Fed., 394; 61 Tex., 114; 55 N. W., 547; 21 L. R. A., 174. *Right to vote:* Fletcher, Sec. 3799; 79 S. C., 1; 66 S. C., 491. *Transfer of stock on books of corporation essential to valid transfer:* Sec. 4320, Code 1922; 67 S. C., 377. *Even if both parties at fault in an ultra vires act Court will leave situation as it is:* 145 U. S., 393, 408; Fletcher, Sec. 4052. *Stockholders cannot sue for injury to corporation, action must be brought by corporate body:* Fletcher, Sec. 4052. *Stockholders have remedy in equity:* Fletcher, Sec. 4064. *"Conversion":* 1 S. C., 441; 1 Nott & McC., 592; 2 Strob. Eq., 370; 114 S. C., 387; 124 S. C., 415; 38 Cyc., 499.

*Messrs. C. T. Graydon* and *Thomas & Lumpkin,* for respondent, cite: *Cases distinguished:* 33 S. C., 451; 40 S. C., 151; 50 S. C., 259; 55 S. C., 9; 132 S. C., 340; 74 S. C., 374; 11 S. C., 486; 79 S. C., 1; 50 Fed., 394; 67 S. C., 377;

66 S. C., 491. *Rights of minority stockholders to sue:* 48 S. C., 80; 49 S. C., 34; 53 S. C., 519; 103 S. C., 525. *Notice to stockholders not such notice as would charge corporation:* 28 S. C., 143; 74 S. C., 368.

March 15, 1928.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

This is an action for actual and punitive damages for the alleged taking, holding and conversion of certain property described in the complaint. The case was tried before Judge W. H. Townsend and a jury at the May, 1925, term of the Court of Common Pleas for Richland County, and resulted in a verdict for plaintiff for the sum of $2,500 actual damages and $2,500 punitive damages. Judgment was thereafter duly entered upon the verdict of the jury, and, within the time required by law, the defendants duly gave notice of their intention to appeal to this Court from the judgment, rulings, and charge of the Court below, and now seek to reverse said judgment upon numerous exceptions, which will be reported. Let the charge of the Circuit Judge also be reported.

### STATEMENT OF FACTS

The facts out of which this action arose are substantially as follows:

A merger was effected of the Commercial Bank and the Bank of Columbia about February, 1920. The assets of the Commercial Bank, except the real estate, seem to have been sold and delivered to the Bank of Columbia. J. Pope Matthews was instrumental in effecting the said merger. The Bank of Columbia not needing the real estate of the Commercial Bank, consisting of a lot and buildings thereon on Main street, in the city of Columbia, the said J. Pope Matthews and I. M. Mauldin organized a new corporation, known as the Commercial Investment Company, for the purpose of taking over said real estate of the Commercial Bank.

The Commercial Investment Company was organized and chartered in February, 1920, and on the 28th day of said month and year the Commercial Bank conveyed said real estate to it, for the consideration of $187,000, which appears to have been made up as follows: $162,000, mortgages assumed by the Commercial Investment Company; $20,000, paid in cash; and $5,000 credited on said purchase price as compensation to said J. Pope Matthews for his services in effecting said merger.

Commercial Investment Company was capitalized at $25,-000, and its stock divided into 250 shares of the par value of $100 per share. All of said stock was issued in the names of said Matthews and Mauldin, and no transfer was ever made upon the books of the Commercial Investment Company of any of said stock. The plaintiff, through its agent and attorney, A. M. Lumpkin, subscribed to 25 shares of the Commercial Investment Company capital stock at the time of its organization, and paid in $2,500 in cash therefor, and ultimately received a certificate of 25 shares of said stock, issued in the name of J. P. Matthews, but no transfer thereof was made upon the books of said corporation; check for said $2,500 being delivered by plaintiff's agent to said J. Pope Matthews, and said certificate of stock being delivered to plaintiff's agent by said J. Pope Matthews. Fifty shares seem to have been delivered to J. P. Matthews in payment for his services in effecting the aforementioned merger of the Commercial Bank and the Bank of Columbia. The remaining $17,500 was raised by the note of J. L. Nettles, discounted at the Palmetto National Bank, secured by 175 shares of stock in the Commercial Investment Company, which liability was later changed from said Nettles to one E. P. Hodges. It is thus seen that plaintiff paid in $2,500 in cash for its stock. Matthews and Mauldin, the owners of the other 225 shares, paid in not a penny; 50 shares of said stock were held by Matthews as compensation for certain services rendered the Commercial Bank and

the Bank of Columbia, and the other 175 shares were indorsed in blank and put up as collateral to secure Nettles' note for $17,500.

Of the mortgages assumed by the Commercial Investment Company on the property so purchased by it from the Commercial Bank, the Palmetto National Bank then or later held all except $62,000, which latter amount was held by the Mutual Life Insurance Company, of Worchester, Mass.

It appears that in June, 1922, or prior thereto, the note of E. P. Hodges (substituted for the Nettles' note) was canceled by the Palmetto National Bank, and the 175 shares of stock in the Commercial Investment Company were surrendered to the Palmetto Bank, and J. Pope Matthews delivered his 50 shares in said company to the Palmetto National Bank, thus making said bank the holder of all the stock in said company, except plaintiff's 25 shares.

Pursuant to a resolution of the finance committee of the Palmetto National Bank, passed June 22, 1922, the Commercial Investment Company, by its officers, Matthews and Mauldin, conveyed the lot above mentioned to the Palmetto National Bank, by deed dated the 30th day of December, 1922, but said deed was not recorded until the 19th day of May, 1923. On April 4, 1923, after the execution and delivery of said deed, but before its recordation, in further pursuance of said resolution of the finance committee of Palmetto National Bank, the Commercial Investment Company negotiated a loan from Metropolitan Life Insurance Company for $75,000, secured the same by a first mortgage on the property embraced in said deed, and took up the mortgage then held by Mutual Life Insurance Company, of Worcester, Mass. All the other mortgages on said property were held by the Palmetto National Bank.

At the time of the organization of the Commercial Investment Company, J. Pope Matthews and I. M. Mauldin became its sole directors; the former became its president, and the latter its secretary and treasurer, which offices they

continued to hold during the period of time in which the aforementioned transactions were had. It does not appear that said company ever had any other officers. During all that time Matthews and Mauldin were officers and directors in the Palmetto National Bank, one of the defendants herein, the former being president and the latter vice president thereof.

In July, 1923, the Palmetto National Bank was taken over by a newly organized bank known as the Columbia National Bank, one of the defendants herein, and the latter assumed the payments of all liabilities of the said Palmetto National Bank shown by its books.

On the 12th day of June, 1924, the Columbia National Bank entered into a written agreement to sell the property covered by the Commercial Investment Company's deed to I. M. Mauldin and J. P. Matthews. The plaintiff had no actual notice up to this time of the deed from the Commercial Investment Company to the Palmetto National Bank, and, learning of the contemplated sale by the Columbia National Bank of said property, on July 3 gave notice through a letter from its attorneys, Thomas & Lumpkin, to G. M. Berry, president of said Columbia National Bank, of its claim. Thereafter, on the 12th day of July, 1924, the Columbia National Bank conveyed said property to Carolina Realty Trust Company, assignee of said Mauldin and Matthews, for the sum of $175,000. On July 22, 1924, this action was instituted.

By exceptions 1 and 8, appellants contend that Matthews and Mauldin were acting in their own interests, or in the interest of the Commercial Investment Company, during the organization and subsequent operation of said company, and that notice to them, or either of them, of the interest of plaintiff in said company as a stockholder was not notice to the Palmetto National Bank, although Matthews and Mauldin were directors and officers of said bank; and for this reason (1) the presiding Judge

erred in permitting the witness A. M. Lumpkin to testify as to certain conversations with, and facts communicated to, said Matthews with reference to the organization of the Commercial Investment Company and the interest of plaintiff as a stockholder therein; and (2) that the said Judge erred in refusing defendants' motion for nonsuit and for a directed verdict, made upon the ground that the action of said Matthews and Mauldin, as officers and directors of the Commercial Investment Company, could not bind the Palmetto National Bank, although they were officers and directors in said bank.

In support of this contention, reliance is had upon several cases decided by this Court, hereafter to be noticed, and upon the following authorities:

"The general rule is that knowledge acquired or possessed by an officer or agent of a corporation otherwise than in the course of his employment, or in relation to a matter which is not within the scope of his authority, is not notice to the corporation." Fletcher, Cyclopedia Corporations, § 2218.

"Knowledge obtained in connection with a transaction with third persons in which the corporate officer or agent does not even pretend to represent the corporation but instead is acting individually," is not imputed to the corporation. "Individual knowledge of an officer of a corporation acquired in the transaction of his own business, while dealing as if he had no official relation to the corporation is not imputable to the corporation. If the president of a corporation acquires knowledge while dealing in his private capacity and in his own behalf with third persons, it is not imputable to the company." Fletcher, § 2235, pp. 3464, 3465.

"The fact that the officer whose knowledge is sought to be imputed owned practically all the stock and was the general manager of another company which had borrowed money from the first corporation, makes the loan in this own interest and opposed to the interests of the lending

company, so as to make his knowledge of preferential payments by the borrowing bankrupt company not imputable to the lending company. One acting for himself is, of course, acting adversely, where dealing with the corporation." Fletcher, § 2245, p. 3478.

Conceding the correctness of the foregoing propositions of law, we proceed to ascertain whether or not the actions of Matthews and Mauldin were altogether in their own behalf, or in the interest of the Commercial Investment Company, and adverse to the interest of the Palmetto National Bank. Granting that these gentlemen were acting for themselves, or for the Commercial Investment Company, at the time of the conversations with, and communication of facts to, Matthews by Lumpkin with reference to the interests of Equitable Trust Company as a stockholder in the Commercial Investment Company, were they acting for themselves or for said Commercial Investment Company at the time of the execution of the deed from the Commercial Investment Company to the Palmetto National Bank, or were they in reality acting for said bank, although describing themselves in the deed as officers of the Commercial Investment Company? We think an examination of the facts will show the latter to have been the real situation.

Matthews, testifying for defendants, admitted that he knew of the interest of plaintiff as a stockholder in the Commercial Investment Company long before the execution of the deed from said company to the Palmetto National Bank; that he was advised of that fact by Lumpkin. Indeed, the check for said stock was delivered to said Matthews, and he in turn delivered the stock to plaintiff.

The minutes of the finance committee of the Palmetto National Bank of June 22, 1922, are as follows:

"Minutes of regular daily meetings of the finance committee of the Palmetto National Bank of Columbia, S. C., held on the 22d day of June, 1922, in the finance committee room of the banking house.

"Present: Wilie Jones, J. Pope Matthews, I. M. Mauldin, T. J. Cottingham, W. T. Love, F. H. Weston, F. H. McMaster.

"Absent: W. W. Ball and John J. Seibels.

"The daily procedure of reading the loan register and marking the notes was first disposed of by the committee.

· "Mr. F. H. McMaster offered the following resolution which was unanimously passed:

" 'Resolved by the finance committee that the real estate account of the bank be debited with $86,002.30, and that the following loans aggregating that amount and now carried against the Commercial Investment Company building on the west side of Main street in the 1300 block be taken up:

" '$54,095.59 mortgage and interest taken over from the Merchants' Bank.

" '$5,000.00 three notes to Palmetto National Bank.

" '$17,500.00 stock notes against Commercial Investment Company.

" '$9,406.71 one-half of two notes of Commercial Investment Company, indorsed by Hardin & Tobias.

" '$86,002.20.

" 'Resolved further that the committee heretofore handling the Commercial Investment Company matters consisting of Messrs. Love, Seibels, and Mauldin, be authorized to proceed to refinance the Commercial Investment Company lot and building for as large an amount as practical at the best rate and on the best terms obtainable, and· that the title to said lot and building be allowed to remain in Commercial Investment Company's name until same is refinanced, and then said title is to be transferred to the bank.' "

Whether or not the $17,500 notes secured by the 175 shares of Commercial Investment Company stock were actually delivered does not clearly appear, but the Palmetto National Bank appears to have taken charge of the 175 shares of Commercial Investment Company stock securing said notes. Indeed, it is alleged in the answer of the de-

fendant, the Columbia National Bank, that the Palmetto National Bank cancelled said note and acquired said stock prior to June, 1922. Matthews states that he turned his 50 shares of stock in said company over to said bank. It is further admitted by defendants' witnesses that it was known to the officers of said bank that there were 25 shares of said stock not in the possession of the bank, and that, when Matthews and Mauldin executed the deed, as president and secretary of the Commercial Investment Company to the Palmetto National Bank, they were acting for said bank in obedience to the above-mentioned resolution of the finance committee of said bank.

"The rule now adopted in most jurisdictions is this: 'Any knowledge or information possessed by an agent at the time of acting as agent for a corporation, with respect to the matter upon which he is to act, is notice to the corporation, whenever and however such knowledge or information may have been acquired, except in cases where express formal notice is required to charge the principal. The point to be regarded is whether the agent actually had the knowledge or information at the time of acting. There is no practical distinction between individual knowledge and official knowledge in such cases.' In other words, if knowledge is acquired by an agent while not acting for the corporation, but afterwards he acts for the corporation in a matter in which it becomes his duty to communicate the fact his knowledge is imputed to the corporation." Fletcher, § 2221, p. 3444.

"Notice given to the cashier of a bank, or to the president of a bank or other officer or agent having general supervision and control over the management of its business, or to any other managing officer or agent, as to any matter within the scope of his authority is notice to the corporation, whether it is communicated to the directors of the corporation or not." Fletcher, § 2216, p. 3436.

"Subject to certain qualifications and exceptions hereinafter noted in this subdivision, it is well settled that, if an officer or agent of a corporation acquires or posseses knowledge of facts, in the course of his employment, and as to matters which are within the scope of his authority, his knowledge is imputable to the corporation." Fletcher, § 2215, p. 3430.

"Notice to, or knowledge of, the president of a corporation, is ordinarily imputable to the corporation. This is equally true as to the knowledge of the president of a bank." Fletcher, § 2235, p. 3463.

At the time of the execution and delivery of the deed by Commercial Investment Company to the Palmetto National Bank, Matthews and Mauldin, as president and secretary of the former company, acted for it in the execution and delivery of said deed, but as president and vice president of said bank they acted for it in receiving and accepting said deed. Indeed, the deed was executed as a result of the resolution passed by the finance committee of the bank on the 22d day of June, 1922, of which both Matthews and Mauldin were members and both were present and voted for its passage. It is therefore difficult to see how it can successfully be maintained that they were acting for themselves or for Commercial Investment Company and not for the Palmetto National Bank. They knew, certainly Matthews knew, that plaintiff was a stockholder in Commercial Investment Company. This knowledge was material. It was gained while they were officers of Palmetto National Bank, and present in their minds when the deed was received and accepted by them as the officers of said bank. In so receiving and accepting said deed, they were not acting adversely to the interest of the bank, but they were acting for it, as it is clearly contemplated by the above-mentioned resolution of its finance committee. Certainly, in accepting this deed for the bank, they were acting within the scope of their authority as its principal officers. It was therefore

proper for plaintiff to show that Matthews and Mauldin, or either of them, knew of the interest of plaintiff as a stockholder in the Commercial Investment Company; and, when it was so shown, it would have been improper for the presiding Judge to have ordered a nonsuit or to have directed a verdict for defendants upon the ground set out in these exceptions.

We do not think the cases cited from this jurisdiction sustain the contention of appellants. These exceptions are therefore overruled.

By exceptions 2 and 3, appellants impute error to the presiding Judge for refusing to grant defendants' motion for a nonsuit, and for a directed verdict made upon the ground:

"That the action should be against the Commercial Investment Company or its stockholders and directors, or at best to set aside the deed of the Commercial Investment Company to the Palmetto National Bank and have an accounting, and that a suit for damages under the evidence brought out in this case will not lie against either of these banks."

Mr. Chief Justice McIver, speaking for this Court in *Latimer v. Railroad Company*, 39 S. C., 44; 17 S. E., 258, uses the following language:

"While it is true that directors of a corporation are regarded as occupying the position of trustees, or at least *quasi* trustees, yet this trust relation is of a twofold character—towards the corporation and towards the stockholders. The corporation having the full legal as well as equitable title to all the corporate property, while the stockholders have such title to their respective shares only, it follows that, so far as the trust embraces or is concerned with the corporate property, the directors occupy the relation of trustees, or rather *quasi* trustees, for the corporation only; and, as to such property, there is no relation of trust between the directors and stock-

holders. Hence it follows that, when the directors are charged with the mismanagement or misappropriation of the corporate property, the action to restrain or redress such wrong must be instituted by the corporation, because the conduct complained of is a breach of the trust relation existing between the directors and the corporation, but is no breach of any trust relation to the stockholders, as no such relation, in regard to the corporate property, exists between the directors and the stockholders. Accordingly, the general rule is that, in such a case, an individual stockholder, or one or more of them, cannot maintain an action for the redress of such wrong. 3 Pom. Eq. Jur., §§ 1090—1095. But, with a view to prevent a failure of justice, Courts of equity recognize certain exceptions to this general rule; and these exceptions are nowhere better or more fully stated than in the leading case of *Hawes v. Oakland,* 104 U. S., 450 [26 L. Ed., 827].

"In that case, Mr. Justice Miller, after showing what is the doctrine of the English Courts, as well as many of our state Courts, on the subject, and after saying that the case of *Dodge v. Woolsey,* 18 How., 331 [15 L. Ed., 401]) relied on by counsel for respondents, does not establish, and was not intended to establish, any different doctrine, proceeds as follows: 'We understand that doctrine to be, that to enable a stockholder in a corporation to sustain in a Court of equity, in his own name, a suit founded on a right of action existing in the corporation itself, and in which the corporation itself is the appropriate plaintiff, there must exist as the foundation of the suit, some action, or threatened action, of the managing board of directors or trustees of the corporation, which is beyond the authority conferred on them by their charter or other source of organization; or such a fraudulent transaction completed or contemplated by the acting managers in connection with some other party, or among themselves or with other shareholders, as will result in serious injury to the corporation, or to the interests

of the other shareholders; or where the board of directors, or a majority of them, are acting for their own interest, in a manner destructive of the corporation itself, or of the rights of the other shareholders; or where the majority of shareholders themselves are oppressively and illegally pursuing a course in the name of the corporation, which is in violation of the rights of the other shareholders, and which can only be restrained by the aid of a Court of equity.'

"And he adds, what seems to us to be of especial importance: 'But in addition to the existence of grievances which call for this kind of relief, it is equally important that, before the shareholder is permitted, in his own name, to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the Court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated, effort with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the Court. If time permits, or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body in the matter of which he complains. And he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it. The efforts to induce such action as complainant desires on the part of the directors, and of the shareholders, when that is necessary, and the cause of failure in these efforts, should be stated with particularity,' etc."

In *Wenzel v. Brewing Co.*, 48 S. C., 80; 26 S. E., 1, which followed *Latimer v. Railroad Co., supra,* Mr. Justice Jones, speaking for the Court, said:

"The general rule undoubtedly is that, when the directors or managing board of a corporation are charged with mismanagement or misappropriation of the corporate property,

the action to restrain or redress such wrong must be instituted by the corporation, since the conduct complained of is a breach of the trust relation between the directors and the corporation. But to this general rule there are well-recognized exceptions, viz., when the directors or managing board do, or threaten to do, some act *ultra vires,* or some act of fraud, oppression or illegality, injurious to the corporation, or in violation of the rights of the stockholders, to prevent injustice, a stockholder is permitted to maintain an action in his own name. This is substantially the rule declared in *Latimer v. R. R. Co.,* 39 S. C., 44 [17 S. E., 258], following and approving the principles announced in *Hawes v. Oakland,* 104 U. S., 450 [26 L. Ed., 827]. Further, before a stockholder can maintain a suit in these exceptional cases, he must show that he has endeavored to get redress of his grievances within the corporation, or he must show facts which would justify a Court in concluding that an effort for redress within the corporation would be unavailing."

After quoting, with approval, the above language, in *Stahn v. Catawba Mills,* 53 S. C., 519; 31 S. E., 498 this court further stated:

"It is also a well-established rule that an application for redress within the corporation, and refusal, need not be alleged, if it be shown that the directors or managing board are themselves the wrongdoers in some alleged breach of trust or fraudulent misappropriation of the corporate property, and have control of a majority of the stock, so as to control corporate action. In such a case it is reasonable to infer that an effort for redress within the corporation would be unavailing. *Brewer v. Boston Theater,* 104 Mass., 378. *Eschweiler v. Stowell,* 78 Wis., 316 [47 N. W., 361]; 23 Am. St. Rep., 411. *Miner v. Belle Isle Ice Co.* [93 Mich., 97; 53 N. W., 218]; 17 L. R. A., 417; and cases cited; *Wheeler v. Pullman Iron & Steel Co.* [143 Ill., 197; 32 N. E., 420]; 17 L. R. A., 821, and cases cited."

In *Kickbusch v. Ruggles,* 105 S. C., 525; 90 S. E., 163, it is said:

"The general rule is that one or more stockholders cannot maintain such an action, as the right is in the corporation. But the courts have recognized exceptions to the rule. One is that when one or more stockholders make it appear that their rights and interests are jeopardized or are being injured, or have been injured by the unlawful acts of the corporation, or its governing body, and that they have endeavored, in good faith and without effect to have their just grievances redressed within the corporation, by proper appeals to the governing body or the majority of the stockholders; or, when they allege facts and circumstances which induce the conclusion that such appeals would have been useless, they may maintain such action in equity in their own names for their own benefit and for the benefit of all other stockholders in like plight who may come into the action and contribute to the expenses thereof."

The practical question, then, is this: Has the plaintiff alleged facts and circumstances which bring its case within the exception? It is not alleged in the complaint that plaintiff made an effort to have its grievances redressed within the corporation and that such effort was unavailing and useless, but it is alleged that plaintiff owned and held 25 shares of stock in Commercial Investment Company, which was known to the Palmetto Bank; that said bank held all the other shares of stock in said company, and as such stockholder "forced and caused the said Commercial Investment Company to make its deed of conveyance hereinabove referred to, dated the 30th day of December, 1922, recorded in the office of the clerk of court for Richland county, S. C., in Deed Book CD, p. 232, covering the entire property mentioned and described in the complaint"; that such conveyance was made without any knowledge or notice given to the plaintiff; that, "although the said Palmetto National Bank knew that this plaintiff was a stockholder in said cor-

poration, and the said Palmetto National Bank willfully, intentionally, maliciously, and without any knowledge to this plaintiff, negligently, and without regard of the rights of others, without giving any notice of its action in the premises as such stockholder owning and holding ninety (90) per cent. of the capital stock of said Commercial Investment Company, received and accepted such deed of conveyance, and failed, refused, and upon demand has failed and refused, to pay over the amount represented by this plaintiff's shares of stock in said Commercial Investment Company, although all other persons interested therein were given full and complete consideration for their interest in said Commercial Investment Company." The answer of the Columbia National Bank alleges that:

"Some time prior to June 22, 1922, the Palmetto National Bank of Columbia acquired the entire outstanding capital stock of Commercial Investment Company, except the 25 shares referred to in the complaint as the property of plaintiff."

We think these allegations of facts and circumstances make it clear that an effort to have the governing body of Commercial Investment Company (composed of Matthews and Mauldin, president and vice president, repectively, of the Palmetto National Bank), or the majority of the stockholders (the Palmetto National Bank), redress the injury done by forcing and causing the Commercial Investment Company to execute and deliver, and the Palmetto National Bank, in receiving and accepting, the deed conveying the corporate assets of said company to said bank would have done no good. The court will infer from such alleged and admitted facts that such an appeal would have been useless. We think the alleged and admitted facts bring the plaintiff's case within the exception recognized in the cases above quoted from, to wit, that its rights and interests have been injured by the unlawful acts of the governing body of Commercial Investment Company, under the control and direc-

tion of the Palmetto National Bank. The conveyance of such corporate assets to the Palmetto National Bank by the Commercial Investment Company, in the circumstances, operated to perpetrate a fraud upon the rights of plaintiff. In *Stahn v. Catawba Mills, supra,* it is said:

"Directors are personally liable to the corporation, or in a proper case to any stockholder, for losses arising from their fraud, breach of trust or gross negligence in the management or disposition of the corporate property, and any person or corporation participating in such fraudulent conduct, or corruptly receiving the corporate property fraudulently disposed of, is likewise liable."

These exceptions are overruled.

3–5      The fourth and fifth exceptions will be considered together. They impute error to the presiding Judge in not granting defendants' motions for nonsuit and for a directed verdict made upon the grounds (1) that the stockholders or directors of the Commercial Investment Company authorized the giving of the deed from said company to the Palmetto National Bank, and therefore any failure to send out notice could not be any grounds for a cause of action; and (2), there never having been a transfer on the stock book of the Commercial Investment Company to plaintiff of the certificate it held, but as said certificate was issued in the name of Matthews, the Commercial Investment Company had no notice of the owner thereof other than that shown by said stock book, and hence could send out notice to no other than to the persons in whose names the stock was issued.

Section 4320, Code 1922, Vol. 3, provides that:

"No transfers of stock shall be valid except as between the parties thereto until the same shall have been regularly entered upon the books of the corporation."

The certificate of stock in the Commercial Investment Company held by plaintiff was issued to J. P. Matthews,

and by him indorsed in blank, and no record of any transfer thereof was made upon the books of said corporation.

"Notwithstanding a provision requiring transfers of stock to be entered on the books of the corporation, a transfer by assignment and power of attorney, indorsed in blank, is valid and binding as between the transferor and transferee, although it is not registered, and even though the corporation wrongfully refuses to transfer the stock and issue new certificates." 14 C. J., 733.

"The legal title to the certificates of stock may, therefore, be transferred as *between the parties* without the entry of the transfer being recorded upon the books of the corporation. But the question whether the legal title was, in fact, transferred, depends upon the intention of the parties." *Maxwell v. Foster,* 67 S. C., 377; 45 S. E., 927.

Here there is no question but that it was the intention of the parties that the legal title should pass. As between the parties, therefore, by the express exception made in the statute, no entry upon the books of the corporation was necessary. Nor is there any question of subsequent purchaser or holder for value without notice. Nor did the failure of plaintiff to have an entry made upon said books work an estoppel, as between the parties, since there is no evidence that Matthews disposed of said certificate of stock by pledge or sale, to any other party. It is not claimed that Matthews sold or otherwise undertook to transfer the *certificate of stock,* held by plaintiff, to the Palmetto National Bank. It was the corporate property itself that was transferred or conveyed to said bank, and it knew that it owned and held, or owned or held, only 90 per cent. of the capital stock of said company. Manifestly, the purpose of having a transfer entered upon the books of the corporation is to give notice. Matthews and Mauldin were the only officers that Commercial Investment Company appears to have ever had. They knew plaintiff held this certificate of stock for 25 shares. They, and they only, had the right to send out

notices to stockholders. If they had actual notice who the stockholders were, it is difficult to see wherein an entry of the transfer of a certificate of stock upon the books of the corporation would have supplied any notice they did not already have. Matthews and Mauldin were officers of the Palmetto National Bank, and, their knowledge of plaintiff's interest as a stockholder being imputed to said bank, there can be no question of said bank being an innocent purchaser for value, without notice, of the corporate assets of the Commercial Investment Company. The exceptions are overruled.

Appellants' sixth exception imputes error to the Circuit Judge in refusing defendants' motion for a nonsuit and for a directed verdict made upon the ground that plaintiff is estopped on account of the knowledge that its agent, Lumpkin, had or could have obtained, as a director of the Palmetto National Bank, of the transactions said bank had with the Commercial Investment Company.

Let it be conceded for the moment that Lumpkin, *as a director* of the Palmetto National Bank, is presumed to have had notice of the transactions of said bank and of the information contained on its records, such constructive knowledge could only operate to affect him as *a director* of the bank, and not as an *individual,* so as to be imputable to him as an officer or agent of another corporation. There is no evidence here that Lumpkin had actual notice of the resolution of the finance committee and of the entries made upon the records of the bank in consequence thereof. On the other hand, he positively asserts that he had no actual notice thereof. In the absence of express notice of same, it is difficult to see how plaintiff could be estopped. The exception is overruled.

The seventh exception imputes error to the Circuit Judge in refusing defendants' motion for a nonsuit and for a directed verdict upon the ground that there has been a loss to all parties concerned, according to the testimony, and there is no more loss to plaintiff than to any of

the others.   The only other parties concerned were Matthews and Mauldin as stockhilders and the Palmetto National Bank as holder of the stock of said Matthews and Mauldin.   If said stockholders and bank invaded the rights of plaintiff by executing, delivering, and accepting a deed to the corporate property of the Commercial Investment Company, it is no defense that they also lost in the transaction. The exception is overruled.

Exception 9 is overruled, for the reason that there is neither plea nor proof of an *ultra vires* act herein.

Exception 10 imputes error to the Circuit Judge in refusing defendants' motion for nonsuit and for directed verdict made upon the ground:

"That, even if Mr. Lumpkin had been given notice, he could not have prevented the sale under the terms and conditions of which it was made, for he only owned 10 per cent. of the stock, and the other stockholders would have outvoted him."

This is, indeed, a very remarkable and unusual proposition.   It assumes that minority stockholders are wholly at the mercy of the majority stockholders; that the minority stockholders, since they may be outvoted by the majority, have no right even to be informed of the actions of the corporation or of the majority stockholders.   Such a proposition is so wholly untenable that it need not be commented upon further than to say that it is not solely a question of voting.   The authorities are so numerous upon the remedies of minority stockholders that it is unnecessary to here refer to them.   But how could minority stockholders avail themselves of any of these well-recognized remedies unless they knew of the actions of the corporation, or of the majority stockholders?   Here there was not only no notice given to the minority, but it seems every effort was made to conceal from it the fact that a deed conveying all the corporate assets to the Palmetto Bank had been executed and delivered. The exception is overruled.

Exceptions 11, 12, and 15 complain of error on the part of the Circuit Judge in his charge upon conversion, and contend that there can be no conversion of real estate. While it is well-settled law in this state that there can be no conversion of real property, there may be a conversion of a certificate of stock. *Conner v. Hillier,* 11 Rich. (45 S. C. L.), 193, 73 Am. Dec., 105.

There can be no question but that the Palmetto National Bank knew of plaintiff's ownership of 25 shares of stock in the Commercial Investment Company at the time of the passage of the resolution of its finance committee, June 22, 1922, and at the time it took a deed from said company to its corporate assets. The books and records of said bank disclosed that at the times mentioned it owned or held only 90 per cent. of the stock in Commercial Investment Company; they also disclosed the resolution of the finance committee, directing that the corporate assets of Commercial Investment Company be taken over by the bank. This knowledge, thus shown by said books and records, was known, or should have been known, to the Columbia National Bank. In addition to this, certain of the officers of the Palmetto National Bank became officers of the Columbia National Bank, and such knowledge as they had, actual or constructive, of the facts disclosed by the records and books of the Palmetto National Bank, was imputed to the Columbia National Bank. The fact that the Palmetto National Bank held only 90 per cent. of the stock in Commercial Investment Company, and yet, by its finance committee, passed a resolution to take over the corporate assets of said company, in payment of alleged indebtedness to said bank from said company, was a circumstance sufficient to put the Columbia National Bank upon inquiry when it took over the assets of Palmetto National Bank and assumed the liabilities as shown by its books, and if pursued with due diligence, would certainly have disclosed that plaintiff owned 25 shares in said company. The very books of

Commercial Investment Company which failed to disclose that plaintiff was a stockholder therein likewise failed to show that the Palmetto National Bank or J. L. Nettles was a stockholder. The entire stock was issued in the names of Matthews and Mauldin. These men were officers and directors of the Palmetto National Bank. Had the Columbia National Bank exercised due diligence, it could easily have ascertained the owner of the other 25 shares. This it did not do, and is therefore deprived of the plea of *bona fide* purchaser for value without notice. *Kirton v. Howard,* 137 S. C., 11; 134 S. E., 859. If the Palmetto National Bank perpetrated a fraud upon plaintiff by taking over the corporate assets of Commercial Investment Company, the Columbia National Bank, charged with notice thereof by the books and records of Palmetto National Bank, as well as by the knowledge possessed by certain of its managing officers, became a party to such legal fraud.

The legal title to the property in question was in the Commercial Investment Company, and not in plaintiff; therefore, there is no claim by plaintiff that there was conversion of such property. But the legal title to the certificate of 25 shares of stock in said company was in plaintiff, which fact was known by the Palmetto National Bank, and was also known, or could easily have been known, by the Columbia National Bank. Had plaintiff presented its certificate of stock to the Commercial Investment Company to be transferred upon its books and such application been refused, such refusal would have been a conversion. 14 C. J., §§ 1164 and 1165. When the Palmetto National Bank took over the corporate assets of the Commercial Investment Company, without any legal authority whatsoever, but in conscious violation of plaintiff's known rights as a stockholder, and appropriated such assets to itself in payment of alleged indebtedness to it by said company, it was certainly as much a conversion of plaintiff's stock as it would have been had the Commercial Investment Company refused

to transfer said stock upon its books upon application by plaintiff. When the Columbia National Bank took over this property, as a part of the assets of the Palmetto National Bank, charged with sufficient facts to put it on notice of such conversion, it became a party to the transaction. The exceptions raising this question are therefore overruled.

The fourteenth exception assigns error in the refusal of the Circuit Judge to grant the motion for a nonsuit as to the Columbia National Bank upon the ground:

"That notice acquired or brought home to said bank after it had acquired the property as a purchaser for value in good faith and without notice of the plaintiff's alleged interest in the property, could not affect its rights to convey such property to a third party, and the conveyance by it of such property to a third person could in no sense amount to a conversion by it or render it liable for damages growing out of such conversion."

We think the Columbia National Bank had notice of sufficient facts to put it upon inquiry, which, if duly pursued, would have disclosed plaintiff's interest. The said bank cannot, in the circumstances, claim to be a purchaser for value without notice. This exception is therefore overruled.

The twelfth and thirteenth exceptions relate to punitive damages, and allege that the Circuit Judge committed error in submitting the question of such damages to the jury and in refusing defendant's motion for a directed verdict as to same, for the reason that there was no evidence of any willful, wanton, or malicious conduct on the part of the defendants, or either of them, and therefore there was no basis for submitting such issue to the jury.

The undisputed testimony is that the purpose of the organization of the Commercial Investment Company was to purchase the property in question and to hold same until some future time when it could be disposed of to advantage. It does not appear that said company had any other excuse for existing. It owned no other property, and engaged in no

other business.  The purpose for which it was organized was known to the Palmetto National Bank.  At the time of its organization said bank discounted the note of J. L. Nettles for $17,500, which indebtedness was later, at the suggestion of said bank, transferred to one Hodges, with the same security.  Later, in June, 1922, said indebtedness was by said bank canceled and the said 175 shares of stock acquired by said bank.  About this time said bank also acquired the 50 shares of stock of Matthews, thus giving it 225 of the 250 shares of stock in said company.  The other 25 shares of said stock were never acquired by said bank. While the books of said company did not disclose that plaintiff owned said 25 shares, those books did disclose that said shares had been issued and were outstanding.  The bank not only knew that it did not own or hold said 25 shares, but it knew that plaintiff did own them.

The further undisputed testimony is that, at the time of the organization of the Commercial Investment Company, the only indebtedness against it consisted of the mortgages assumed by it, aggregating about $162,000, that the property purchased by said company was well located in the city of Columbia, and that, from the calculations made, it was assumed the rents accruing therefrom would absorb the interest, insurance, taxes, and other carrying charges.  Defendants failed to show that the property was, at any time, not rented.  If the rents were insufficient to take care of said carrying charges, no attempt was made to show the amount of such deficiency.  And yet, it is claimed that on June 22, 1922, the amount of the indebtedness of said company was $208,108.01.  This amount includes not only the mortgages assumed, but the $17,500, indebtedness formerly represented by the J. L. Nettles note and a note for $18,000.  The said $17,500 was not the indebtedness of the Commercial Investment Company, and never became such. When the bank canceled the note of Nettles or Hodges and took over the 175 shares of stock, it became a stockholder in the

Commercial Investment Company. If it saw fit to cancel the notes and rely upon the security, it could not thereby be placed in any better position than that of any other stockholder, and had no right to charge the indebtedness against said company. There is no satisfactory evidence that the $18,000 note was the indebtedness of said company. This note was secured by stock of the Bank of Columbia. There is no evidence that the Commercial Investment Company ever owned any stock in said bank, and Matthews and Mauldin, the only officers said company ever had, knew nothing about said stock being the property of said company. There is not a particle of evidence that the note representing this alleged indebtedness was executed by any officer of said company.

It does not appear what rate of interest the mortgages assumed by the Commercial Investment Company bore, but, assuming that they bore interest at the rate of 7 per cent., the interest at this rate from February 28, 1920, the date of the deed to Commercial Investment Company, to June 22, 1922, the date the Palmetto National Bank, by its finance committee, assumed to take over the property of said company, would be $26,271.74. Add this to the principal, and we have $188,271.74, nearly $20,000 less than the alleged indebtedness of said company on June 22, 1922. It is not reasonable to suppose that said mortgages bore interest at a greater rate than 7 per cent. If this be a correct supposition, it is difficult to see how the indebtedness of said company could have amounted to the sum claimed, for surely the rents were sufficient to pay the taxes and insurance. The action of the bank in charging this $18,000 against said company, unexplained as it is, is exceedingly suspicious.

If the $17,500 and the $18,000 be deducted from the alleged indebtedness of said Commercial Investment Company, as we think they should, the real indebtedness of said company could not be as much as the price obtained by the Columbia National Bank for the property in question. But,

assuming for the moment that these amounts were in fact a part of the indebtedness of said company to Palmetto National Bank, what right had said bank to take over the corporate assets of the company in payment of its demands against said company? It held mortgages, which could have been foreclosed. If Commercial Investment Company was in fact insolvent, Palmetto National Bank, as a creditor, had its remedy under Section 18, Art. 9 of the Constitution and Section 4251, Code 1922, against the subscribers to 175 shares of stock in Commercial Investment Company, for the entire amount of said subscription was unpaid. The books of said company show that these stocks were issued to Matthews and Mauldin. They both say they paid in not a cent. The said stock was assigned to J. L. Nettles, and he borrowed from the Palmetto National Bank $17,500 on his note secured by said stock. The bank not only failed to proceed against the persons in whose names the stock was issued, but canceled the note of Nettles and took the stock in payment thereof (Mauldin said it was regarded as canceled), and now claims that said $17,500 was an indebtedness of said company. If the value of the corporate assets of Commercial Investment Company had so depreciated, why did Palmetto National Bank "choose" to cancel the note of Nettles or Hodges and take over the 175 shares of valueless stock in payment thereof? Why did it not proceed against the subscribers to said stock?

Instead of pursuing the legal remedies it had, Palmetto National Bank deliberately took the corporate assets of Commercial Investment Company in payment, not only of valid debts, but also of claims that cannot, under the testimony, be valid debts of said company. It is true that ordinarily a corporation may, by its officers, convey its real estate, for value, without notice to the stockholders. But this is quite a different thing from conveying its real estate at the request of a stockholder to such stockholder in payment of an alleged claim. Indeed, when Palmetto National Bank

took over this 175 shares of stock and canceled the note of Nettles or Hodges, it became a stockholder, and proceeded to take over the corporate property of said company in payment of the amount it had paid for such stock. In addition to this, it took over said corporate property in payment of a claim of $18,000 when there is not a particle of evidence it was the indebtedness of said company. If these acts on the part of the Palmetto National Bank be not "willful," it is difficult to conceive of a willful act.

To convey all the assets of Commercial Investment Company, while not *de jure* a dissolution of the corporation, *de facto* it had that result. If it was desired to dissolve said company, Sections 4279 to 4283, Code 1922, prescribe the manner in which it could have wound up its affairs and dissolved. No effort whatever was made to pursue the method prescribed by these statutes. Direct action was determined upon.

The Columbia National Bank had sufficient notice to put it on inquiry, which, if pursued with reasonable diligence, would have disclosed that the Palmetto National Bank had taken over the corporate assets of the Commercial Investment Company wholly without legal right. When it accepted this property as a part of the assets of the Palmetto National Bank, with notice of the above-mentioned facts, or with notice of sufficient facts to put it upon inquiry, which, if diligently pursued, would have led to a discovery of said facts, it became a party to the legal fraud perpetrated upon plaintiff. Then, after receiving actual notice of the claim of plaintiff, it proceeded to sell and dispose of said property over the protest of plaintiff. How, then, can it be claimed that said bank did not act willfully, in conscious violation of plaintiff's known rights, when it so sold and disposed of said property?

We find no error in the charge of the Circuit Judge, or in his submitting the issue of punitive damages to jury. The exceptions raising this question are overruled.

The dissenting opinion concedes that "this is an action at law, for damages; it was so treated, placed on calendar 1, tried by a jury. * * *" The litigants throughout the trial in the Court below, having regarded the case as one at law, and it appearing that no reversible error of law was committed on the trial below, we do not see why this Court should permit the defendant to change its position, or why this Court should on its own motion regard the action as one other than an action at law.

The judgment of this Court is that the judgment of the Court below be, and the same is hereby affirmed.

MR. CHIEF JUSTICE WATTS and MR. JUSTICE STABLER concur.

MR. JUSTICE COTHRAN (dissenting) : In its essence, this is an action by a single stockholder of a corporation, for damages on account of *injury to its individual stock,* resulting from the alleged unlawful disposition by the defendants *of the assets of the corporation.*

It is characterized in the statement contained in the transcript as "an action for actual and punitive damages *for the alleged conversion* of certain property described in the complaint."

Naturally, one would expect to find in the complaint or evidence some showing that the property alleged to have been converted *was the property of the plaintiff.* On the contrary, there is no question but that the property was that of the Commercial Investment Company, a corporation in which the plaintiff held 25 shares of stock.

The gravamen of the complaint is that the total assets of the corporation, consisting of the lot and building on Main Street, have been unlawfully transferred by the Commercial Investment Company, the corporation in which the plaintiff held its stock, to the Palmetto National Bank, by it to the Columbia National Bank, and by it to the Carolina Realty Trust Company, and that by these successive conveyances the value of the plaintiff's stock has been totally destroyed.

It seems to be assumed that the Carolina Realty Trust Company, the last purchaser and apparently the present owner, is a *bona fide* purchaser for value, without notice of any want of authority to convey, in the preceding grantors. At any rate that company is not a party to this action, and its title, or the right of the plaintiff, *in the right of the corporation,* to proceed against it, is not involved herein.

Hence it seems to me clear that, as stated in the opening paragraph above, this action must be considered as an action by a single stockholder of a corporation, for damages on account of *an injury to his individual stock,* resulting from an alleged unlawful disposition *of the assets of the corporation.*

It may be assumed that there is evidence tending to establish the following facts; in fact *they may be assumed to be true;* and yet it may not follow by any means that the plaintiff can maintain the present action :

(1) That the plaintiff was and is a *bona fide* stockholder in the Commercial Investment Company to the extent of 25 shares, fully paid for.

(2) That the Commercial Investment Company, without notice to the plaintiff, and *without authority,* conveyed the real estate in question to the Palmetto National Bank.

(3) That consequently the Palmetto National Bank acquired no title, and could not convey a valid title to the Columbia National Bank, which it attempted to do.

(4) That consequently the Columbia National Bank acquired no title, and could not convey a valid title to the Carolina Realty Trust Company, which it attempted to do.

(5) That both the Palmetto National Bank and the Columbia National Bank, at the dates of the several conveyances to and by them, respectively, had actual notice of the plaintiff's status as a stockholder in the Commercial Investment Company, whose property was being disposed of unlawfully.

(6) That the plaintiff has duly qualified itself, under the principles announced in *Latimer v. Railroad Co.*, 39 S. C., 44; 17 S. E., 258, and cases following that case, to institute the present action, *in the right of the corporation.*

The real estate unquestionably belonged to the corporation. An unlawful disposition of it was *a wrong to the corporation.* If the property was disposed of at a price below its value, of course the interest of each stockholder was affected by such disposition; it *indirectly* caused a loss to them. But the plaintiff, as a stockholder, had no title or interest in the property disposed of, or in the damages which might be recovered for an injury to it; he had no title or interest in it which was entitled to individual protection; whatever interest the plaintiff possessed was an interest, as a stockholder, *in the right which the corporation had* in or in respect to its assets. The right and remedy of a stockholder must be worked out through the interest of the corporation in the damage which may have been done *to its property;* and that must be the injury sustained, in this particular case, by reason of an illegal disposition of the assets of the corporation.

Outside of authority upon the proposition, it must appear just and proper. There may have been 100 stockholders. Shall each one be allowed to maintain an action, regardless of the question whether, as a matter of fact, the corporation has suffered any damage at all, by the disposition of its assets, and recover the amount paid for his stock, plus punitive damages? I cannot think so.

The action is specifically characterized as "an action for actual and punitive damages, for the alleged *conversion of certain property described in the complaint.*" Extract from transcript of record. The property described is real estate, and of course an action for the conversion of *real estate* will not lie. 38 Cyc., 499, 2002.

But, if it could be entertained, the wrong is one *to the corporation,* and must be redressed *in the right of the corporation.*

The authorities cited in the opinion of Mr. Justice Blease, which sustain the right of an individual stockholder to maintain *an action,* upon the ground that application under circumstances to the corporation or to its managing directors, would be a vain and useless ceremony, are unquestioned; but they all hold that the action by the stockholder *is in the right of the corporation;* they are very far from holding that, because he may have this right, he has also the right to maintain an action based upon a consequent depreciation of his stock. That which depreciates his stock, is a withdrawal of certain assets of the corporation; that is an injury to the corporation; it justifies the *corporation* in seeking redress therefor, which inures to the benefit first of the creditors of the corporation, and then of the stockholders.

In 6 Fletcher Corp., § 4051, it is said:

"While an injury to the corporation resulting from wrongdoing, fraud, or negligence of corporate officers operates, indirectly, as an injury to stockholders, the injury to stockholders is secondary and the injury to the corporation primary. It is for the corporation, therefore, to institute action for wrongs inflicted upon it by corporate officers or to set aside a contract made in fraud upon corporate rights. * * * Illustrating the general principle further, * * * if the property of a corporation is converted by a stranger, or. if a trespass is committed thereon, or if any injury to its property is caused by the negligence of another, or if an injury is threatened, the injury is to the corporation, not to the stockholders individually, and it is for the corporation, and not for the stockholders as individuals, to take proper steps, by action or otherwise, to prevent or redress the injury."

And:

"The action is derivative—*i. e.,* in the corporate right— if the gravamen of the complaint is injury to the corporation, or to the whole body of its stock or property without any severance or distribution among individual holders, or seeks to recover assets for it, or prevent dissipation of them."

And at Section 4052:

"Since the rights arising out of the contracts of a corporation belong to it, and not to the stockholders individually, and injuries to the property of the corporation caused by the wrongful acts or negligence of others are injuries to the corporation itself, it necessarily follows that any action at law to enforce such a contract, or recover damages for its breach, or to obtain redress for such injuries, must be brought by the corporation in the corporate name, and through its managing officers. Neither a single stockholder nor all the stockholders, as individuals, can maintain an action at law in their own names upon a contract made by the corporation, or for injuries committed against the property of the corporation, as trespass, trover for the conversion of property, an action on the case for injuries caused by the acts or negligence of another or an action of replevin or ejectment to recover corporate property. All such actions must be brought in the corporate name, and cannot be maintained by stockholders in their own names, either on their own behalf because of their equitable interest in the property of the corporation, or on behalf of the corporation. This principle applies whether the wrongs complained of are the acts or negligence of strangers, or the fraudulent or wrongful acts or negligence of the directors or managing officers of the corporation. A statutory cause of action for damages is within this rule if it accrues to the corporation. The fact that one person owns all the stock of a corporation does not enable him to sue in his own name for an injury to the corporation, for the corporation is none the less a separate and distinct person in the law."

"As stated above, it makes no difference in the application of this rule that the injury is caused by the officers of the corporation in their management of its affairs. Misfeasance or negligence on the part of the managing officers of a corporation, resulting in loss of its assets, is an injury to the corporation, for which it must sue. A stockholder cannot sue for damages because his stock is rendered worthless."

And at page 6868:

"At law there is no exception to this rule, even when the corporation refused to sue. In such a case, however, as we shall see in the following sections, the stockholders have their remedy in equity."

Supporting the text he cites California—*Gorham v. Gilson*, 28 Cal., 479. Connecticut—*Allen v. Curtis*, 26 Conn., 456. Georgia—*McAfee v. Zettler*, 103 Ga., 579; 30 S. E., 268. *Steele Lumber Co. v. Laurens Lumber Co.*, 98 Ga., 329; 24 S. E., 755. *Bethune v. Wells*, 94 Ga., 486; 21 S. E., 230. Indiana—*Tomlinson v. Bricklayers' Union No. 1*, 87 Ind., 308. *Cutshaw v. Fargo*, 8 Ind. App., 691; 34 N. E., 376; 36 N. E., 650. Louisiana—*Faurie v. Millaudon*, 3 Mart. (N. S.), 476. Maine—*Kennebec & P. R. Co. v. Portland & K. R. Co.*, 54 Me., 173. *Smith v. Poor*, 40 Me., 415; 63 Am. Dec., 672. *Drinkwater v. Portland Marine Ry. Co.*, 18 Me., 35. *Hodsdon v. Copeland*, 16 Me., 314. Massachusetts—*Bartlett v. Brickett*, 14 Allen, 62. *Smith v. Hurd*, 12 Metc., 371; 46 Am. Dec., 690. Michigan—*Randall v. Dudley*, 111 Mich., 437; 69 N. W., 729. *Talbot v. Scripps*, 31 Mich., 268. *People v. State Treasurer*, 24 Mich., 468. New York—*Moran v. Vreeland*, 81 Misc. Rep., 664; 143 N. Y. S., 522. *Niles v. New York Cent. & H. River R. Co.*, 35 Misc. Rep., 69; 71 N. Y. S., 271. *Thompson v. Stanley* (*Sup.*), 20 N. Y. S., 317. *Bennett v. American Art Union*, 7 N. Y. Super. Ct., 614. Wisconsin—*Button v. Hoffman*, 61 Wis., 20; 30 N. W., 667; 50 Am. Rep., 131.

At Section 4064, it is said:

"If the directors or other officers of a corporation exceed their authority, not under an honest mistake, or are guilty of fraud or negligence in the management of the affairs of the corporation, threatening or causing loss to the corporation, the corporation, by action of the majority, may remove them, and may sue them for redress. In such a case, the right to remove them and to sue for redress is in the corporation, for the injury is to the stockholders collectively, and

individual stockholders cannot maintain a suit for relief or redress, unless for some reason it cannot be obtained through the corporation. If for any reason, however, relief or redress cannot be obtained through the corporation, as where the guilty directors own a majority of the stock or the majority of the stockholders approve or acquiesce in the fraud or mismanagement, or will not sue or take other steps to prevent the same, or hold the directors liable, or where there is no time to obtain action by the stockholders, any stockholder may obtain appropriate relief for the benefit of the corporation by a suit in equity on behalf of himself and other stockholders."

In Thomps. Corp. (3d Ed.), § 4560, it is said:

"In other words, a stockholder cannot sue individually for injuries affecting the corporate or collective rights. This duty the law devolves on the directors as the trustees and agents of the corporation, and, in the absence of a charge of fraud or collusion, it will generally be presumed that the directors are acting for the best interests of the corporation. * * * The fact that one has become the sole owner or a majority owner of the stock of a private corporation does not entitle him to sue in his own name on a claim belonging to the corporation. The reason for the rule is that the duty, the breach of which constitutes the ground of action, is a duty to the corporation considered as a legal entity and not a duty to any particular stockholder, and that the officers, directors, or agents guilty of the breach of duty are not in theory of law the agents of the shareholders, but are the agents of the company. The right of action at law to redress such wrongs therefore vests exclusively in the corporation while it is a going concern or in its receiver or other legal representative after it has passed into liquidation. The suit, if allowed, is to redress wrongs to the corporation and not to redress individual wrongs to the stockholders. A stockholder has no direct interest in such a suit. His interest is merely contingent and subordinate."

At Section 4561 it is said:

"It follows from the foregoing rule that shareholders cannot maintain a bill to redeem corporate property which has been sold under a mortgage * * * nor to collect the corporate assets," etc.

The rule is very clearly stated in the case of *Kickbusch v. Ruggles*, 105 S. C., 525; 90 S. E., 163:

"The general rule is that one or more stockholders cannot maintain such an action, as the right is in the corporation. But the Courts have recognized exceptions to the rule. One is that, when one or more stockholders make it appear that their rights and interests are jeopardized or are being injured, or have been injured by the unlawful acts of the corporation, or its governing body, and that they have endeavored, in good faith and without effect, to have their just grievances redressed within the corporation, by proper appeals to the governing body or the majority of the stockholders, or when they allege facts and circumstances which induce the conclusion that such appeals would have been useless, they may maintain such action *in equity* in their own names for their own benefit and for the benefit of all other stockholders in like plight who may come into the action and contribute to the expenses thereof."

The fact that in such an action, the proceeding is instituted for the benefit of the individual stockholder *and all other stockholders* is necessarily conclusive of the fact that the suit has been instituted *in the right of the corporation* which could not be induced to do so. It can only be instituted *in equity,* and *in the right of the corporation;* it cannot be instituted under any circumstances *at law,* or to redress an injury to the indirect interests of the stockholder; that is, to his derivative interests derived solely from his relation as stockholder. *Wells v. Dane,* 101 Me., 67; 63 A., 324. *Bartlett v. R. Co.,* 221 Mass., 530; 109 N. E., 452. *Brock v. Poor,* 216 N. Y., 387; 111 N. E., 229. *Niles v. Railroad Co.,* 176 N. Y., 119; 68 N. E., 142. *Kelly v. Mississippi River Coaling Co.* (C. C.), 175 F., 482. *Elmergren v.*

*Weimer,* 138 Wis., 112; 119 N. W., 836. *Caffall v. Bandera Tel. Co.* (Tex. Civ. App.), 136 S. W., 105.

This is an action at law, for damages; it was so treated, placed on calendar 1, tried by a jury; a verdict in favor of the plaintiff for $5,000 rendered; judgment entered.

The plaintiff's cause of action which he might have presented, upon a showing that the corporation would not act, was a cause of action in the right of the corporation, just as if the corporation itself were the plaintiff; he could not have presented this cause of action *at all* by an action at law, even if he had made the proper showing of the corporation's failure to act; the action is cognizable only in equity.

The question whether the plaintiff, in view of the alleged unlawful sale, had the right to require an accounting by the purchaser of *the real value of his stock* prior to the sale, is suggested but not decided, for this is not such an action. See *Tanner v. R. Co.,* 180 Mo., 1; 79 S. W., 155; 103 Am. St. Rep., 534.

I think, therefore, that the judgment of the Circuit Court should be reversed, and the case remanded to that Court for the direction of a verdict in favor of the defendants under rule 27.

MR. JUSTICE CARTER concurs.